Gallagher *against* Gallagher.

Stewart *against* Gallagher.

If a legacy be given, payable out of a debt due by the testator, the legacy would not fail by reason of the failure of the *modus* appointed for payment. Such legacies are only specific as having a precedency of payment out of the debt or security; but if the debt be not in existence at the testator's death, or if it be insufficient to pay the legacies, the legatees will be entitled to satisfaction out of the general estate.

A legacy to the children of the testator's brother, "to remain in the hands of my executors until the said children arrive at the age of twenty-one years, and the interest of said money commencing one year after my decease, shall be paid to the parents of the said children, annually, by my executors, during their minority, for the purpose of schooling the said children," is not recoverable upon a promise of the executor to pay it. But if he had assets in his hands sufficient for the purpose, the interest of the legacy may be recovered from his estate after his death.

Where there are two executors, only one of whom takes out letters testamentary, and he becomes insolvent and dies, the other executor may assume the administration of the estate, and recover the funds for the payment of legacies.

ERROR to the common pleas of *Westmoreland* county.

Thomas Gallagher and others, by their father and next friend, James Gallagher, against George Gallagher's administrators and Thomas G. Stewart and others, by their father and next friend, James Stewart, against George Gallagher's administrators. These were two actions of *assumpsit*, to recover legacies, in the last will and testament of Thomas Gallagher, deceased, in which the facts were the same, and, by consent, tried by the same jury.

The plaintiffs, in support of the issues on their part, gave in evidence as follows, to wit:

1st. Will of Thomas Gallagher, deceased, dated the 11th of March 1831.

"Whereas, for a number of years past, I have assisted and attended to the business of my brother, George Gallagher, in carrying on his mercantile business, both in Carlisle, and afterwards in Harrisburg, as a remuneration therefor, I request him to pay the following legacies, viz. I give to the children of my brother, James Gallagher, of Westmoreland county, now living, or to be born hereafter, the sum of 5000 dollars, share and share alike. And, also, give to the children of my sister, Mary Ann Stewart, of the same county, the same sum of 5000 dollars, share and share alike,

VI.—3 K

[Gallagher v. Gallagher.]

and if any of the children of my said brother or sister should die in their minority, and without lawful issue, then their respective shares are to go to their surviving brothers and sisters respectively; the above legacies are to remain in the hands of my executors hereinafter appointed, until the said children of my said brother, James, and sister, Mary Ann, shall respectively arrive at the age of twenty-one years, and the interest of said money, commencing one year after my decease, shall be paid to the parents of the said children, annually, by my executors during their minority, for the purpose of schooling the said children. It is my will, and I do hereby devise and give to my brother, George Gallagher, my real estate, being a lot in Maclaysburgh, to him and to his heirs forever. And further, I do hereby give and bequeath to my brother, George Gallagher, all the rest and residue of my estate, real and personal, and mixed, to him and his heirs forever; and it is further my will, that if any of the legatees, above mentioned shall at any time hereafter be dissatisfied with this my will, and make any difficulty or disturbance, in relation to their said legacies or my estate, they shall respectively forfeit their legacy interest to their brothers and sisters, whose conduct shall be different. I do further declare, that I have now no knowledge or remembrance of any just debts owing by me to any person; but if any such should arise against me, or be discovered by my executors, it is my will that their amount when paid shall be deducted from the legacies to the children of my brother, James, and sister, Mary Ann, aforesaid *pro rata.* And I do hereby appoint my brothers, George Gallagher and John Gallagher, the executors of this my last will; as witness my hand and seal, this 11th day of March 1831."

" George Gallagher, sworn as executor, April 28th, 1831, and letters testamentary granted the same day."

2d. Deposition of John Gallagher.—" That Thomas Gallagher was my brother, and resided at Harrisburg, Dauphin county, Pennsylvania; that he made his will, the date of which I do not recollect, leaving his estate to George Gallagher, now deceased; out of which estate my sister, Mary Ann's, children (the said Mary Ann, being intermarried with James Stewart, of Westmoreland county, Pennsylvania) and James Gallagher's children, my brother, were to receive 5000 dollars; each set of children, and together 10,000 dollars. That George Gallagher, independent of what he derived from Thomas Gallagher, by the will aforesaid, had no estate. That, according to the best of his knowledge and belief, George Gallagher must have received about 65,000 dollars, from said Thomas Gallagher's estate; that after the death of said Thomas, I heard said George say, that he would pay my brother, James's, children, and my sister, Mary Ann Stewart's, children. I have often heard said George Gallagher say, that the amount my brother, James's, children were to receive, under the will of Thomas Gal-

[Gallagher v. Gallagher.]

lagher, deceased, the 5000 dollars bequeathed to my sister, Mary Ann Stewart's, children, and the 5000 dollars that I was to receive out of said Thomas's estate, was but a small portion of the estate.

"The estate of Thomas Gallagher, consisted of merchandize, bonds, notes, cash, and real estate, all which passed into the hands of said George Gallagher. I have often, in repeated conversations, with George Gallagher, heard him say, that he would pay the children of my brother, James Gallagher, and my sister, Mary Ann Stewart, their respective legacies, and that he had ample means to do so, as it was but a small part of the estate he received from his brother, Thomas. I heard my brother George say, shortly before his death, that none of those children were paid. That said George had no means of acquiring property, except what Thomas gave him. That I was well acquainted with the affairs of said Thomas and George Gallagher."

3d. Deposition of Adam Wert.—"That I was well acquainted with George Gallagher and Thomas Gallagher. I was in their employ as an assistant store-keeper six years. According to the best of my knowledge and belief, Thomas Gallagher owned the whole or nearly the whole of the estate which said George Gallagher had in his possession. When I was acquainted with Thomas Gallagher, and when I lived with him and George, he, (the said George,) was a young man behind the counter, like myself; he had no means of acquiring property, except what he got from Thomas Gallagher. Thomas Gallagher was considered a rich man. I heard George say that he owed his brother, James Gallagher's, and his sister, Mary Ann Stewart's children, 10,000 dollars. That said George Gallagher said he contemplated purchasing a house at Harrisburg, Pennsylvania, called Rodes's Corner, in which he intended to invest the money of said children. I have heard said George Gallagher say, after the death of said Thomas Gallagher, that he got from Thomas, property and estate, amounting to from 40 to 60,000 dollars.

4th. Deposition of John Shoch.—"About the year 1826 I sold a house and lot, in Harrisburg, to Thomas Gallagher and George Gallagher, for 8000 dollars, and the deed was made to George Gallagher, by the request of Thomas Gallagher. They gave me a note on Helfenstine & Company, endorsed by both of them, and the balance of the purchase money was paid to me in cash by Thomas Gallagher. Thomas Gallagher appeared to be connected with George Gallagher in business, but on what terms I cannot tell. They carried on store keeping in the borough of Harrisburg till Thomas died, and George continued the business till he died. Thomas, during his lifetime, purchased chiefly all the goods, and George attended to the selling. They did a large business. I lived in the adjoining house. I have heard George say what Thomas had left him by will, but cannot remember the amount."

Cross-examined.—Question. Who contracted with you for the

purchase of the house? Answer. Thomas Gallagher first spoke to me about it, and afterwards both called on me about *it*. George insisted on some privileges, which were not granted him. The note from P. Helfenstine & Son was drawn payable to Thomas & George Gallagher. The boxes, I think, were marked with the names of Thomas and George, but I am not certain. George always said that Thomas had an interest in the store.

5th. The deposition of John Wise.—" I lived two years adjoining the storehouse of George & Thomas Gallagher. Thomas Gallagher purchased all the goods, and appeared to have the principal management and control of the business. George was the best salesman, and attended to the selling of the goods. I sold a great deal of fish and salt for them, and attended to the loading and unloading of the wagons for them; and during the two years I lived beside them, I deposited their money for them in the bank: the deposits were made daily, and ranged from 200 to 700 dollars per day. All the real estate was bought by Thomas, and the deed made to George. I was present when Thomas contracted with Robert Harris for an eight acre lot, adjoining the borough of Harrisburg, and the deed was made to George Gallagher. Thomas was older than George."

Cross-examined.—Question. What knowledge had you of Thomas Gallagher buying goods? Answer. From what George Gallagher told me. The money was deposited in the Harrisburg Bank in the name of George. The name of George Gallagher was on the sign, and not Thomas. The goods were all marked for George Gallagher. I helped to unload a good many boxes and open them. I was never present at the purchase of any real estate, except that which Thomas purchased from Robert Harris, and was bought for 1000 dollars. Robert Harris lived in Harrisburg at this time. George Gallagher told me that the store and real estate belonged in part to Thomas Gallagher. George would sometimes call it all his own. The bills for the fish and salt which I sold for them, were made out in George's name. The books of the store were kept in the name of George.

6th. The deposition of James M'Cormick, Esq.—" That in the month of March 1831, I visited Thomas Gallagher, who was then lying sick in the house of George Gallagher, his brother, in Harrisburg, and while there it was mentioned, by either George or Thomas Gallagher, who were both present, that it was desired that I should draw or reduce to writing a will for Thomas; and the terms of it, or most of them, were then mentioned; that is, there was to be a legacy of 5000 dollars to the children of his brother James, and the same sum to the children of his sister, Mary Ann Stewart, all of Westmoreland county, Pennsylvania, and the same sum of 5000 dollars was to be given his brother, John Gallagher, and the residue to be given to George Gallagher. After a short visit, I promised to call again, when I had more leisure, and write the will, and with-

[Gallagher v. Gallagher.]

drew.   According to arrangement, I returned again, either the afternoon of the same day, or the next day.   Pen, ink and paper were furnished to me in the chamber where Thomas was lying, and I proceeded to draw the will.   George Gallagher, Thomas Gallagher and myself, were all the persons present at the time. When beginning to write the will, it was mentioned, either by George or Thomas Gallagher, that the name of their brother, John Gallagher, was not to be mentioned in the will.   That after my first visit, by direction of Thomas, George had given his note or notes to his brother John for the 5000 dollars, intended to be given to him, and the will was then written with no other material variation from the terms mentioned at my first visit.   John Gallagher was in the house, but not in the chamber of Thomas, while I was there. George Gallagher continued in the room during the whole time of the writing of the will, and had some conversation with his brother Thomas as to the time of payment of the respective legacies; and I was then directed to write that the money was to remain in the hands of George Gallagher during the childrens' minority.   Nothing was said respecting the amount of Thomas Gallagher's estate, but George Gallagher was fully acquainted with the terms of the will, and assented to them at the time the will was written.   I have no knowledge of the extent or amount of Thomas Gallagher's property. He appeared to be connected in business with George, but on what terms I am unable to say.   I remember once in the summer of 1831, George Gallagher, in conversation with me, declared that he intended to invest the 10,000 dollars bequeathed to the children of his brother and sister, in some kind of stock, that he might afterwards have no trouble with it.

Cross-examined.—Question.   Had you any knowledge of Thomas Gallagher having any property at the time of making his will? Answer.   I have no knowledge of any specific property belonging to Thomas, except a lot of ground in Maclaysburgh, mentioned in his will.   Question.   Do you appear here to examine witnesses on the part of the plaintiffs?   Answer.   I was requested to procure the attendance of John Shoch, as a witness, and to have his deposition taken on behalf of the plaintiffs.   The other witness, John Wise, I met accidentally in this office, and requested his deposition to be taken at the same time.   Question.   Had you any correspondence with the plaintiffs or their counsel, relative to the taking of testimony in this place?   Answer.   None whatever.   I was called upon by Mr Carpenter, the senator from Westmoreland county, on Monday last, to appear this day and give my deposition; and had not heard before that time, that any depositions were to be taken.

The defendants, in support of the issues on their part, gave in evidence as follows, to wit:

1st. Inventory of the personal estate of George Gallagher, deceased, filed the 1st of August 1833, amounting to 9625 dollars 88 cents.

2d. Supplementary inventory, filed the 1st of February 1834, amounting to 33,547 dollars 30¼ cents.

3d. Administration account, passed the 9th of September 1835, exhibiting a balance in accountant's hands of 6202 dollars 79½ cents.

4th. Deposition of Andrew Graydon, testifying as follows:

" I have been acting as agent for the administrators of George Gallagher, deceased, from the time they took charge of the estate until the present time; and the claims which have been presented against the estate, and others which have come to my knowledge, and are supposed to be correct, and yet remain unpaid, amount to the sum of 3287 dollars 89 cents, and that in addition to this amount, claims have been presented which are not admitted by the administrators, to the amount of 20,268 dollars 67 cents; making, in all, 23,556 dollars 56 cents.   For the purpose of ascertaining the means in possession of the administrators to pay the above amount, I have taken from the administration account, filed in the orphans' court of this county January the 2d, 1835, and afterwards confirmed by the court, the balance then admitted to be in their hands, amounting to 6203 dollars 79 cents; to which I add for book accounts, since received by me as their agent, 2269 dollars 13 cents, making a *total* of 8472 dollars 92 cents, from which I deduct the payment since made by the administrators, for claims upon the estate, costs, &c., amounting to 5719 dollars 89 cents, which leaves a balance now in their hands of 2753 dollars 3 cents.

From a careful examination of the judgments, notes, book accounts, &c. yet due the estate of George Gallagher, I am of the belief that not more than 2500 dollars will be collected, and that amount at considerable cost, which, added to the above 2753 dollars 3 cents, will amount to 5253 dollars 3 cents.   There is not, *to* my knowledge, any other means to meet the claims against the estate, excepting the real estate, which, in my opinion, will not bring, at sale, more than 8500 dollars, which, added to the above sum of 5253 dollars 3 cents, will make 13,753 dollars 3 cents, which, deducted from the total amount of claims against the estate, will show a deficiency of means to pay the debts, of near 10,000 dollars. In stating the amount of claims against the estate, I have not added any interest on them, nor the costs and expenses incident to a settlement of the estate.   The annexed statement has been carefully made out, and will exhibit the particulars upon which the amounts above stated are founded.   It is my decided belief that if the disputed claims be recovered from the estate, it will be insolvent to the amount of more than 9000 dollars.   Mr Abram Horbach has a claim against the estate, which I have not included in the statement, because I did not know the amount; the claims will be increased by the amount of his bill."

Statement of claims presented against the estate of George Gal-

[Gallagher v. Gallagher.]

lagher, and yet remain unpaid, was exhibited, showing a deficiency to pay debts of 9803 dollars 53 cents.

5th. Deposition of James M'Cormick, Esq.—"During Thomas Gallagher's last illness, I visited him at the house of his brother, George Gallagher, in Harrisburg, and while there on one occasion, it was mentioned, either by George or Thomas, who were both present, that it was desired to have Thomas's will written, and I was requested to write it. The terms intended to be inserted in the will, were mentioned, which were the same afterwards written in the will, with the exception of a legacy to John Gallagher, of 5000 dollars. Being obliged to go away, I promised to return sometime afterwards and comply with their request, and took my leave. I did return afterwards according to arrangement, and found Thomas and George in the room, and I then proceeded to reduce the will to writing. When about commencing to write, it was mentioned that John Gallagher's name was not to be mentioned in the will, that after my previous visit, an arrangement had been made, by direction of Thomas, between George and John, in which George had given John his note or notes for 5000 dollars, the amount of the intended legacy from Thomas. The will was then drawn, omitting the legacy to John, and executed on the day of its date. John Gallagher was in the house of George at the time, but was not present in Thomas's room while I was there, but I saw him in going in or out of the house. George was present all the time while the will was being written, and had some conversation with Thomas, when he was dictating the terms in relation to them. I never saw the note or notes given by George to John. The notes on which suit was brought in the Dauphin common pleas, and tried last February, between John Gallagher and the administrators of George Gallagher, were not the original notes, but were said to have been given in place of them"

6th. Deposition of Charles A. Snyder.—"I think the lot in Maclaysburgh, formerly belonging to Thomas Gallagher, deceased, would not sell at this time, for a sum exceeding 700 dollars. I own property on the corner, opposite said lot. I was acquainted with Thomas Gallagher, and to my knowledge he pursued no other business, than that of attending to his brother George's concerns. He lived extravagantly, except in the latter part of his time, when he became disabled."

7th. Deposition of A. Horbach, Jun.—"That he lived with George Gallagher, late of Harrisburg, deceased, from the year A. D. 1828 to the year 1831, at Harrisburg, aforesaid, as an apprentice or clerk to the said George Gallagher. Mr Thomas Gallagher, brother to the said George, was there the principal part of the time, and I never heard him claim any part of the store kept by the said George, as belonging to him, the said Thomas. What clothing the said Thomas Gallagher took out of the store, was not

charged to him; the said Thomas Gallagher also took small sums of money out of the store frequently, which was not charged to him. The boxes and goods were all marked in the name of George Gallagher, and the bills were all made out in his name. Thomas Gallagher, aforesaid, did not follow any business whatever in Harrisburg, during the time that deponent knows of, excepting that he regularly purchased the goods, &c., for the store, in Philadelphia. Deponent believes, that the expenses of said Thomas Gallagher, while at Philadelphia, when purchasing goods as aforesaid, were paid by the store, aforesaid, in Harrisburg. Deponent thinks, that the said Thomas Gallagher, had no other means of maintaining himself, than what he received from the said store. He lived well and high, and at one time he took a trip to the Springs, in Virginia, and took a servant with him. His manner of living was expensive and extravagant. Deponent has not known of any account being kept between the said George Gallagher and Thomas Gallagher. The accounts in the store were kept in the name of George Gallagher, aforesaid. Said Thomas Gallagher did not, nor did he appear to take any command in the direction of the business of the store."

8th. Deposition of John M. Horbach.—"I was in the employment of George Gallagher, late of Harrisburg, deceased, as a clerk in his store, for four years or more, ending in the year 1832, in Harrisburg, aforesaid. Thomas Gallagher, the brother of said George, did not do much at any thing in Harrisburg, during that time, and did not do any thing in the store, but generally purchased the principal part of the goods for the store in Philadelphia, and staid the most part of his time in Philadelphia, and George Gallagher settled with him for buying the goods in Philadelphia, at different times, perhaps two or three times in a year, or more. Thomas Gallagher got clothes out of the store, but I do not recollect distinctly, whether they were charged to him or not, but I do not recollect of his getting any money out of the store, excepting at the times he was settled with, as aforesaid. I do not think that said Thomas Gallagher had any other means of maintaining himself, than what he got from said George Gallagher, and he must have lived expensively, as he was sick very frequently, and travelled a great deal. The whole business of the store was conducted under the name of said George Gallagher; and I never knew that said Thomas Gallagher had any concern in it, nor did I ever know him to make any claim to it."

. It was admitted, that Thomas Gallagher, died about the 1st of April 1831, and that George Gallagher died about the 20th of June 1833.

Whereupon the court charged the jury as follows, to wit:

This is an action of *assumpsit*, brought under the following circumstances:

On the 11th of March 1831, Thomas Gallagher made his last

will. It is agreed, that he died on or about the 1st of April 1831, and it is in evidence, that on the 28th of the same month, letters testamentary issued to George Gallagher, the intestate of the defendants. It is admitted, and contended on the part of the defendants, that George Gallagher died insolvent.

The first question naturally arising is, whether the present action can be sustained upon this statement of facts; assuming, for the purpose of this inquiry, that George Gallagher, had he lived, would have been bound to pay this legacy.

The defendants contend that it cannot be maintained against them. 1st. Because an administrator should have been raised on the estate of Thomas Gallagher, and the action brought against that administrator. 2d. That such administration should have been raised and the suit brought by his administrators. 3d. Because no refunding bond was tendered previous to the institution of this suit. 4th. That in any event, the plaintiffs can only recover the amount of the interest which has accrued upon those legacies.

Assuming the question, that George Gallagher was bound for this legacy, in consequence of having received funds of Thomas Gallagher, into his hands, to be expended as directed by his last will, and that he died insolvent The answer to all these positions of the defendants is, that he was a trustee for their benefit, and his estate being insolvent, the present action can be maintained, the object being to reach the fund and bring it into this court, to preserve it, for all persons having an interest in it, and there is no legal impediment to the bringing of the present action, and this brings us to the merits of the case.

The defendants contend that this is a specific legacy, payable out of a fund arising from the amount that George Gallagher was indebted to Thomas Gallagher, for his services. And that they have shown in fact, that George Gallagher was not indebted to the testator, and the fund having failed, the legacy is extinguished. But we are of opinion, there is another legal principle more applicable to this legacy. If a testator in disposing of his property, by mistake or otherwise, disposes of property which belongs to another, and by the same will, devises to that person, other property, the title to which is not disputed, the latter devisee will not be permitted to take under the latter devise, and to retain that part of his estate which the testator attempted to dispose of, but shall be put to his election. If he claims under the will he shall not be permitted by his act to defeat a provision made for the benefit of another, and at the same time derive an advantage to himself from the bounty of his testator. He may give up the legacy or devise left to him, and retain his own; or he may accept the devise, and permit the other devisee to enjoy that property which was his, but he shall not have both.

Now to apply these principles to the present case. If George Gallagher elected to take under the will of his brother, as residuary

vi.—3 l

devisee, and in that capacity, did receive an amount more than sufficient to discharge the legacies, his representatives are not now to be permitted to say, that the legacies shall fail, because there was no such fund as contemplated by the testator, out of which they were to be discharged; as against him and them, the fund shall be considered as actually existing.

The question for the jury then is, whether George Gallagher did receive any, and what amount of assets of the estate of Thomas Gallagher, and did he take a substantial beneficiary interest under his will. This depends upon the testimony, (review testimony of Gallagher, Wert, Wise, Shoch, M'Cormick, and A. & J. M. Horbach.)

Several of these witnesses testify that he stated to them, that he had received a large amount of property, and that he reiterated his liability and intention to pay the legacies to his brother's and sister's children. But it is our duty to tell you, that if he received no estate or property from the estate of Thomas Gallagher, then this promise or acknowledgment would not be binding upon him, because there would be no consideration. But if the jury believe the witnesses that he made such acknowledgments and promises, it affords a strong corroboration that he had abundant assets in his possession.

The defendants have adduced testimony to show, that the estate of George Gallagher is insolvent, and such is unquestionably the weight of the evidence; but if George Gallagher, under the will of his brother, received property beyond what was sufficient to discharge the legacies, his subsequent insolvency cannot affect the plaintiffs' right to recover. The defendants, however, say further, that George Gallagher being insolvent, his creditors are entitled to be paid, in the first instance, because Thomas Gallagher in his lifetime, made a gift of all his property to his brother George, and upon the credit of that property, he contracted debts, and they should be paid. There is a possibility that it is so, but the weight of evidence is the other way, and the declarations of George Gallagher go to repel any such gift; but as this is a question of fact, we leave it for your consideration, and if you find that it was so, and the estate is insolvent, the creditors should be first paid, and the plaintiffs cannot recover.

But if George Gallagher took the property under his brother's will, from that moment the plaintiffs became his creditors to the amount of this legacy, and creditors of the most meritorious class, for their claim is a portion of that estate, the bulk of which was bestowed upon George Gallagher, in consideration of natural love and affection.

The result of the whole is this: if you believe that George Gallagher took property of his brother under his will, more than sufficient to discharge the legacies, the plaintiffs are entitled to recover, and your verdict should be in their favour. If, upon the contrary,

[Gallagher v. Gallagher.]

you should believe that George Gallagher derived no benefit from the will of his brother, your verdict should be for the defendants.

To which opinion of the court, the counsel for the defendants excepted.

Errors assigned.

1st. The court erred in charging the jury that the plaintiffs were entitled to recover, and that there was "no legal impediment to the bringing of the present action."

2d. The court erred in saying, that if George Gallagher took, as residuary legatee under the will, an amount more than sufficient to pay all the legacies, his representatives shall not be permitted to say that the legacies shall fail, because there was no such fund as contemplated by the testator, out of which they were to be discharged.

3d. The court ought to have instructed the jury, that from the whole evidence in the case, a recovery by the plaintiffs would be in fraud of creditors, and therefore upon the law, their verdict should be for the defendants.

4th. There was error in the court, charging the jury that the plaintiffs could recover more than the interest of the legacy for the recovery of which the action was brought.

*Kuhns* and *Findlay*, for plaintiffs in error.
*Armstrong* and *Coulter*, for defendants in error.

The opinion of the Court was delivered by

Sergeant, J.—These suits were brought to recover legacies bequeathed to the plaintiffs respectively, by the will of Thomas Gallagher, deceased. It is contended by the defendants, that they are specific legacies, payable out of a debt which the testator claimed to be due to him from his brother George, for his assistance and attention to the mercantile business carried on by George; that in fact no such debt was due, and therefore, as the fund has failed, the legacies also failed, and the court ought to have instructed the jury to that effect: instead of which, they placed the plaintiffs' rights on another principle, which principle does not apply to the case. I do not perceive in these bequests any of the features of specific legacies. The assistance given by Thomas to his brother, seems to be recited in the commencement of the will, rather as a reason, why he carves these sums out of his estate, the whole of which, with these exceptions, he bequeaths to George. Even if the legacies were given out of the debt thus claimed as due to the testator by George, it would not follow, that the legacies fail, by the failure of the *modus* appointed for payment. The rule is, that such legacies are in one sense only specific, namely, that against all other general legatees, they have a precedency of payment out of the debt or security; but in another sense, the legacies are general, since if the debt be not in existence at the testator's death, or if it be insufficient to pay the legacies, the legatees will

[Gallagher v. Gallagher.]

be entitled to satisfaction out of the general estate of the testator. 1 *Rop. Leg.* 181, *and cases cited.* The error assigned in the charge of the court, as to the election by George Gallagher to take under the will, (the second error assigned,) is therefore, immaterial, because the legacies were payable out of the general assets of the estate, though no claim against George Gallagher existed.

If assets came to the hands of George, the acting executor, he became responsible for these legacies, (subject to deduction for the testator's debts) according to the will; to pay over the interest on the principal sums of 5000 dollars each, annually, to the parents respectively, for the education of the children during their minority, and on their arriving at full age, to pay the principal to the children themselves. It is clear, however, that neither the parents nor the children can recover the principal, while the children are, as it is stated they are, minors. This would be contrary to the express directions of the will. The testator declares, the principal shall remain in the hands of his executors during the minority of the children, and that their parents should receive the interest. The principal is contingent until the children come of age: for if any of them should happen to die under age, and without issue, their shares are to go over to their surviving brothers and sisters respectively; and even after-born children are included in the will. The principal sum, therefore, cannot be recovered by either parents or children, while the children are minors. It is only the interest which can be claimed before their majority, and that is to go to the parents respectively, to be disbursed by them in their education.

Two executors, it seems, were appointed—George Gallagher and John Gallagher. George alone, took upon himself the administration, and acted. Evidence was given by the plaintiffs, to show, that although the mercantile business was carried on by George in his own name, yet in reality, the whole of the property, both real and personal belonged to Thomas: and that after the death of Thomas, George stated, that the property which came to him from Thomas, amounted to from 40 to 60,000 dollars, and promised to pay the legacies to the plaintiffs; and also spoke of investing the 10,000 dollars in real estate for their security. George died in June 1833, a little more than two years after the death of his brother Thomas, it would seem, considerably indebted, and his estate is now said to be insolvent. The other executor, John, who is living, has never acted. The defendants are the administrators of George.

Under these circumstances, the principal sum ought to be in the hands of a trustee: and John, being surviving executor, has a right as such to come forward, and assume the administration of Thomas's estate, and the trusteeship of this fund by virtue of his executorship. *Toll. Ex.* 44. Should he decline, some other trustee may be appointed, who would have authority to recover the

[Gallagher v. Gallagher.]

principal sum, and hold it according to the will. All that the defendant can be liable for in the present suits, is the interest which was due to the parents, during the lifetime of George. That became a debt from George, for which he was liable, if he received assets from the testator to pay it. After his death, the defendants do not hold as trustees, but as administrators of a deceased trustee, and ought to pay over the fund, principal and interest, from the expiration of the year preceding George's death to the trustee, who would then hold the principal, and pay over the interest to the parents, till the time arrives for paying the principal, according to the will, to the children entitled under it.

It was contended by the defendant, and evidence was given to show, that George died indebted to various persons, and not leaving assets to pay all his debts; and it is assigned for error, (see the 3d error) that the court ought to have instructed the jury, that, from the whole evidence in the case, a recovery by the plaintiffs would be in fraud of creditors, and therefore, their verdict should be for the defendants. I am of opinion the court below went as far on this point as they ought to have gone. They instructed the jury, that, if Thomas Gallagher, in his lifetime, made a gift of all his property to his brother George, and upon the credit of that property, he, George, contracted debts, and the estate is insolvent, the creditors should be first paid, and the plaintiffs cannot recover: but, if George Gallagher took the property under his brother's will, the plaintiffs became his creditors. As such creditors, however, they are not entitled to recover the whole legacies, for the reasons I have stated. The parents are only entitled to recover from the defendants, the interest due by George Gallagher on those legacies in his lifetime.

The testator died in April 1831; George died in June 1833. By the will, the interest is to commence one year after the testator's decease, and to be paid annually; George, therefore, was accountable, and his administrators were bound to pay to the parents one year's interest, due in April 1833, supposing assets came to the hands of George.

Judgment reversed, and a *venire facias de novo* awarded.