Malone *v.* Mooring et al.

## B. H. MALONE, Executor, *v.* JOHN MOORING *et al.*

1. LEGACIES: DEMONSTRATIVE.—A demonstrative legacy is one, where the fund out of which it is payable, or the thing bequeathed, is not specified and distinguished from all others of the same kind. It is so far general in its character, that if the fund fail out of which it is to be paid, the legatee will be entitled to receive his legacy out of the general assets of the estate; and so far specific, that it will not be liable to abatement with general legacies upon a deficiency of assets, but only with specific legacies charged upon the same fund.

2. LEGACIES: SPECIFIC.—Courts are averse to construing legacies as specific, and, to constitute a specific legacy, the intention of the testator must be so expressed in reference to the thing bequeathed, or clearly appear from the will.

3. LEGACIES: DEMONSTRATIVE: SPECIFIC.—Where a particular fund is referred to as pointing out a convenient mode of payment of the legacy, the legacy is demonstrative. Where the gift is of the fund itself, or the intention is clear to burden the fund, in whole or in part, with the payment of the legacy, the legacy is specific.

4. LAST WILL AND TESTAMENT: CONSTRUCTION OF: SLAVES: EMANCIPATION OF, AND EFFECT UPON SPECIFIC BEQUEST OF CASE IN JUDGMENT.—The will of M. contains the following bequest: "I give to my son John, negroes to the amount of $3,350, negro men at $800, women at $600, and smaller ones in proportion." Held—That this was not a bequest of so much money, with a designation of the negroes as the fund out of which it was to be paid, and was, therefore, not a demonstrative legacy; but that it was a specific bequest of negroes, and upon their emancipation, the legacy, by the destruction of the corpus of the property, fails.

5. LEGACIES: GENERAL AND SPECIFIC: WHEN CHARGED UPON A PARTICULAR FUND, WHICH FAILS, HOW SATISFIED.—Legacies of money, payable out of a particular fund or security, are general legacies, and if the fund or security fail, they are to be satisfied out of the general assets of the estate. If the bequest is of certain property, or money in a certain fund or security, the legacy is specific, and upon the destruction of the property, or the failure of the fund or security, the legatee will not be entitled to satisfaction out of the general assets of the estate.

APPEAL from the Probate Court of Marshall county. Hon. Thomas A. Falconer, judge.

The facts of the case are set forth in the opinion of the court.

*Stith, Upshaw* and *Falconer*, for appellant. No brief on file.

*Walter* and *Scruggs*, for appellees.

The clauses of the will under which the defendants claim their legacies are as follows:

"Item 4th. I give to my son, John Mooring, four hundred acres of land, etc. (describing the land). I also give him negroes to the amount of $3,350, negro men at $800, women at $600, and smaller negroes in proportion.

"5th. I give to my daughters, Mildred, Susan, Rebecca, Willie, and Lucy, $3,350 each, to be paid them at the age of twenty or marriage, $3,000 in negroes, to be valued the same as those given to my son John in item 4th, and $350 in money."

Item 7th of the will directs that the defendant, John Mooring, can receive his legacy when he reaches the age of nineteen years. In the construction of the foregoing clauses, they must be taken and construed together in order to ascertain the real intention of the testator. Item 4th gives to the defendant, John Mooring, negroes to the amount of $3,350; the 5th clause gives to each of his daughters the same amount, $3,000 of which to be paid in negroes, and the residue in money. It is manifest that the testator intended to give his children so much money, and directed out of what portion of his estate it should be paid. The whole will shows that the testator desired to make his children equal by giving them $3,350 each, and all the residue of his estate to be divided equally amongst them; and the record shows that all the children except the defendants in error had received that sum. The legacies are not specific legacies, it is clear. No interest whatever vests in the legatees until they arrive at the age at which, by the terms of the will, they are entitled to receive their legacies. The legacies are neither specific nor general. The testator gives his children as they arrive at a certain age so much money, and merely directs what particular portion of his estate out of which the money shall be paid, and are therefore demonstrative legacies. 1 Roper on Legacies, pages 197, 198, 199. A specific legacy is the bequest of a particular thing or money specified and distinguished *from all others of the same kind.*

A demonstrative legacy is where the money or thing is not specified and distinguished from all others *of the same kind,* but a particular fund is pointed out for its payment. We insist that in this case it was the intention of the testator to

give *fixed* sums to his children, and merely directed a particular portion of his estate out of which they were to be paid. It was a fixed, *separate, independent, distinct interest* to give the legacies—the particular property out of which they were to be paid being a secondary thought. Such being the fact, if the mode by which the legacies are to be paid fail, or if the particular fund out of which the legacies are to be paid fail, yet the legatees are entitled to have them made good out of the general assets of the estate. 1 Roper on Legacies, 192; 2 Lomax on Exrs., top pages 69, 70, 71; 2 Williams on Exrs. 993, 994, 995; Baliett's Appeal, 14 Penn. 451; *Mayo* v. *Bland,* 4 Maryland Chancery, 425; *Myers' Exrs.* v. *Myers,* 33 Ala. 85; *Gallaher* v. *Gallaher,* 6 Watts, 483.

From the authorities above cited, we insist that it is clear that the legacies are demonstrative. In the case of *Myers' Exrs.* v. *Myers* the court hold the following language: A specific legacy is the bequest of a particular thing or money, specified and distinguished from all others of the same kind. A demonstrative legacy is where the thing or money is not specified and distinguished from all others of the same kind, but a particular fund is pointed out for its payment.

Suppose that, before the time had arrived when the defendants were entitled to their legacies, there had not been sufficient negroes to pay said legacies, from any other cause than their ceasing by the act of the government to be property, from death or from any cause, could it for a moment be doubted but that the defendants would be entitled to be paid out of the general assets of the estate?

The object of this appeal is a construction of the clauses of the will above referred to. We insist that a construction of the clauses together clearly indicate that the intention of the testator was to *demonstrate* the source of payment, and not to make the existence of the fund, charged with the payment, a condition of the legacies, and that they are to be satisfied out of the general assets of the estate upon the failure of the particular fund.

ELLETT, J., delivered the opinion of the court.

John and Willie Mooring, by their next friend, filed their petition in the Probate Court of Marshall county, at March Term, 1866, against R. H. Malone, executor of James Mooring, deceased, who was the father of petitioners, in which they allege that the said James Mooring died on the first day of May, 1857, leaving a last will and testament, which was admitted to probate at May Term, 1857, and of which the appellant is the surviving and acting executor. That by one clause of said will the testator bequeathed to the petitioner, John Mooring, when he reached the age of nineteen years, slaves to the amount of $3,350, and to the petitioner Willie, his daughter, and to his other four daughters, $3,000, to be paid them in slaves, at a valuation fixed by said will, and $350 in money. That Lucy, one of the said four daughters, has died intestate and unmarried, without having received her said legacy; but that all the other legatees received their legacies in negroes, as early as 1858, and either sold or enjoyed them. That petitioner, John Mooring, arrived at the age of nineteen on the 1st of February, 1866. That the slaves are now free, but there are sufficient assets to pay said legacies in money, and that they are entitled to have the same paid out of the general assets of the estate, as they cannot now be paid out of the slaves. The petition prays that the construction of the will may be settled, and that the executor be decreed to pay the said legacies in money.

The answer of the appellant admits the facts as stated in the petition, and submits the construction of the will to the court.

The clauses of the will bearing upon the matter in question, are as follows, to wit:

"Item 4. I give my son, John Mooring, four hundred acres of land in Texas, Bexar county, it being the same land bought of Doctor John Jameson by me, for which the said John Mooring is to pay $800. I also give him negroes to the amount of $3,350, negro men at $800, and women at $600, and smaller negroes in the same proportion.

"Item 5. I give my daughters Mildred, Susan, Rebecca, Willie,

and Lucy, $3,350 each, to be paid them at the age of twenty, or of marriage—$3,000 in negroes, to be valued the same as those given to my son John in item 4, and $350 in money. It is my wish and desire that the negroes given to my daughters be as much in families and as many of them females as circumstances will admit of. The negroes given to my above-named daughters are given to them during their lifetime, and at their death to their children, if any.

"Item 6. It is my will and desire that my estate be kept together, farm worked as at present, that my children Susan, Rebecca, Willie, John, and Lucy be raised and educated as nearly alike my older children as circumstances will admit of, and the expenses to be paid out of my estate.

"Item 7. When my son John arrives at the age of nineteen years, his legacy to be given him if my executors think best or safe to do so."

The remaining clauses of the will dispose of the residue of his estate, "after all the legacies above provided for have been paid out," equally among all his children (of whom he had others living besides those before named), and the children of his deceased children, but no division to be made until his son John should arrive at the age of nineteen; and provision is made for the management of the property, and the care and custody of the younger children.

The Probate Court decreed that the executor should pay the legacies out of any moneys in his hands as executor, upon petitioners giving refunding bonds; and the executor appeals from this decree.

It is to be observed that the legacy to the petitioner, John Mooring, is to be given him at the age of nineteen, only at the discretion of the executor, if he should "think best or safe to do so;" and it is not shown that the petitioner, Willie, has reached the age of twenty, or has been married. No objection, however, is raised on those grounds. The object of the parties seems to be to obtain a judicial construction of the will, and as the conclusion to which we have come on that question does not require that we should notice these formal points, we will consider the case on the merits.

The appellant is not represented in this court by counsel, and we are left without the benefit of the views he maintains in opposition to the claims of the appellees; and it does not appear that the other residuary legatees, who are to be prejudiced by a decree in favor of the appellees, have any notice or knowledge of the pendency of this proceeding.

On behalf of the appellees it is contended that the legacies contained in the fourth and fifth clauses of the will are pecuniary legacies, and that the slaves are referred to merely for the purpose of indicating the fund out of which the money is, in the first instance, to be raised, and that, upon the failure of that fund, the legacies are to be paid out of the general assets. And the question is whether they are general pecuniary legacies, with a specific fund pointed out, as a convenient mode of payment, or specific bequests of slaves, the number to be limited by the criterion of pecuniary value prescribed by the will.

A legacy of quantity is ordinarily a general legacy; but there are legacies of quantity in the nature of specific legacies, as of so much money, with reference to a particular fund for payment. This kind of legacy is called by the civilians *a demonstrative legacy;* and it is so far *general*, and differs so much in effect from one properly *specific*, that if the fund be called in or fail, the legatee will not be deprived of his legacy, but be permitted to receive it out of the general assets; yet the legacy is so far specific, that it will not be liable to abate with general legacies upon a deficiency of assets, but only with other specific legacies charged upon the same fund. 1 Roper on Legacies, 192; 2 Williams on Exrs. 1043; 2 Lomax Exrs. 125.

It is to this class of demonstrative legacies, that the appellees contend that the bequests of Mooring's will belong.

Courts in general are averse from construing legacies to be specific; and the intention of the testator in reference to the thing bequeathed must be clear. The intention of testator upon this subject, as in every question on the construction of wills, is the principal object to be ascertained; and it is therefore necessary, that the intention be either expressed in reference to the thing bequeathed, or otherwise clearly appear from the will, to

constitute the legacy specific. *Chaworth* v. *Beech*, 4 Vesey, page 555.

Where the particular fund is referred to, only as pointing out a convenient mode of payment, the legacy is considered demonstrative; but if the gift is *of the fund itself*, in whole or in part, or is so charged upon it as to show an intent to burden that object alone with its payment, it is esteemed as specific. 2 Williams Exrs. 1043, note 1; *Chaworth* v. *Beech*, 4 Vesey, Jr., page 555, note *a; Smith* v. *Fitzgerald*, 3 Ves. and B. 5; Ludlam's Estate, 13 Penn. State R. 188; Balliet's Appeal, 14 Jd. 461; *Walls* v. *Stewart*, 16. Id. 275.

In ascertaining by the light of these principles, and with the aid of adjudged cases, the intention of the testator in the present case, we remark in the first place that the negro slaves of the testator remained in specie at his death, and for several years thereafter, that these legacies all became vested on the testator's death, and that they are now liable to disappointment, only because, before the time appointed for delivery of the property to the legatees, the government has interposed, and has destroyed the *corpus* of the property, as effectually as would have been done by the natural death of all the slaves. Those already delivered to other legatees are emancipated from their control, as well as those retained for the satisfaction of the particular legacies now in question. It is therefore not a case to which the doctrines relating to the ademption of legacies can apply, for that takes place only where the property specifically bequeathed has ceased to exist before the death of the testator. It is true such a legacy would be equally lost by the destruction of. the property after that event, but it would not be what the law means by an ademption of the legacy.

The language of the fourth item of the will does not, in our opinion, purport to give a pecuniary legacy of $3,350 to the son of the testator, with a demonstration of the negroes as the fund out of which the money should be paid. The gift is not of money, but of "negroes." "I give him negroes." But how many and what negroes? He does not ascertain the particular individuals, or their number, but establishes a rule

by which the number and identity can be made certain. He gives so many and such negroes, as at $800 for men, $600 for women, and in the same proportion for smaller ones, will amount to the aggregate value of $3,350. It is plain that the testator intended his son to receive slaves, and not money. All that is said about the amount and value relates merely to the number to be given, and the mode of setting them apart to him. And this intention is recognized and affirmed by what has already taken place in the execution of the will, for three of the legatees, as far back as 1858, received their legacies in slaves, allotted to them in the mode pointed out in this clause. Hence it is a gift of the *corpus* of the fund set apart for the satisfaction of the legacies, and therefore, according to the authorities, is to be regarded as a specific bequest.

The fifth clause of the will makes this conclusion still more indisputable. The first few lines, to wit: "I give my daughters (naming them) $3,350 each, to be paid them at the age of twenty or marriage," would, of course, be a general pecuniary legacy, if the language was not qualified by what follows. But it goes on to declare in what manner it shall be paid, to wit: "$3,000 in negroes, to be valued the same as those given to my son John in item 4, and $350 in money." The testator here not only recognizes the fact that he had "given negroes" to his son John, but he fully negatives the idea that the legacies to his daughters are to be paid in money; for he expressly declares how much shall be paid in money, and how much in negroes. It is impossible that he would have intended the whole legacy to be paid in money, chargeable, in the first instance only, upon his slave property, when he provides in plain terms that only a small part shall be paid in money, and that the principal part of the legacy shall be paid in negroes, at a certain valuation, that is, that a portion of the fund itself shall be distributed to the legatees.

But this is not all. The testator further declares that the negroes given to his daughters shall be as much in families, and as many of them females, as the circumstances will admit; and he limits the estate given to them in the negroes to a life estate,

and gives them, on the death of his daughters, to their children. This is a conclusive refutation of the idea that the testator intended to give money, and not slaves; for if money was the subject of the bequest, and the negroes only the object referred to as the primary source from which the money was to come, it would be wholly impertinent to define the estate, and prescribe the limitations regulating the enjoyment of the slaves by his daughters in their lifetime, and by their children after them.

The adjudged cases on legacies similar to those under discussion, sustain the conclusion to which we have arrived. Legacies of money, payable out of a particular debt or security, which failed, are held to be general legacies. *Roberts* v. *Powek,* 4 Vesey, page 150; *Coleman* v. *Coleman,* 2 Vesey, page 639; *Gallagher* v. *Gallagher,* 6 Watts, 473. And in *Kirby* v. *Potter,* 4 Vesey, page 748, a legacy of £1,000 " *out of my reduced bank annuities,*" was held a general legacy; but the Master of the Rolls said, ": If this legacy had been expressed thus, '*part of my* reduced bank annuities,' or '*in my* reduced bank annuities,' I could not have considered that the testator meant anything but an *identical part of the corpus.*" So a bequest of " such part of my stock of horses which he shall select, to be fairly valued and appraised, to the amount of £800," was held to be a specific bequest. *Richards* v. *Richards,* 9 Price, 219; 4 Exchequer Rep. 73. A bequest of " $3,917, *in notes,* to be taken out of my notes as soon after my death as it can be done," was decided to be a specific legacy. *Perry* v. *Maxwell,* 2 Devereux's Equity R. 502. So, where a testator bequeathed to his wife " $500, in personal property, such as she may select" (2 Williams Exrs. 1192, note 1), and where the bequest was of the sum of £4,000 capital stock in the £3 per cent. consols, or in whatever of the government funds the same shall be found invested. *Lambert* v. *Lambert,* 11 Vesey, 607.

It plainly appears from the whole will that the testator was disposing of his own slaves, which he then owned, and which he continued to own at the time of his death. The legacies all vested at that period. The *corpus* of the property has

since been destroyed. The legatees who received their shares before the general emancipation took effect, have suffered equally with those whose shares were not yet reduced to possession; and we do not see how these petitioners can stand on any better footing than their sisters, in regard to a claim for recompense or satisfaction out of the general estate, for the specific property which they have lost. They are all in the same category in regard to their loss, at least *prima facie*, for it is possible some of those who received their shares may have turned the negroes into money—but that does not appear; and it would be no ground for decreeing compensation against them, if it did. The decree of the court below in effect requires these legatees who have received their shares, and lost them by force of the emancipation, to contribute ratably, from their interest in the residue, to make up the specific legacies lost by the petitioners, and it also requires such contribution from the other legatees, who take nothing under the will but their interest in the residuum. Nothing is more clear than that if a specific legacy be disappointed, by the failure of the particular fund, the legatee will not be entitled to any recompense or satisfaction out of the personal estate. 1 Roper on Leg. 192. *Burrie et al.* v. *Murphy*, 25 Miss. 473.

On the whole, we are of opinion that the decree of the court below was erroneous, and ought to be reversed, with costs, and the petition dismissed.