GILMER *et al. v.* GILMER.*

(Division A.   May 28, 1928.   Suggestion of Error Overruled Aug. 7, 1928.)

[117 So. 830.   No. 27138.]

*Corpus Juris-Cyc. References: Wills, 40Cyc, p. 1563, n. 55; p. 1870, n. 67, 69; p. 1872, n. 82; p. 1904, n. 44; As to when devise is specific or general question of construction, see 28 R. C. L. 291; 6 R. C. L. Supp. 1717. As to whether bequests of stocks and bonds or notes are general or specific legacies, see annotation in 11 L. R. A. (N. S.) 49; 6 A. L. R. 1377; 28 R. C. L. 293; 3 R. C. L. Supp. 1568.

See, also, 117 So. 371.

*Forrest G. Cooper,* for appellants.

*Chapman, Moody & Johnson,* for appellee.

Argued orally by *Forrest G. Cooper,* for appellant, and *Elbert Johnson,* for appellee.

McGowen, J. On September 4, 1926, M. D. Gilmer executed his holographic last will and testament, and died October 29, 1926. The will was promptly probated, and J. W. Gilmer, Jr., the executor named in said will, was promptly appointed as such. In order to fully understand the questions presented to us for decision, in this case, it is necessary to set out the will *verbatim,* which is as follows:

"Last Will and Testament of Mathew Devere Gilmer.

"I, Mathew Devere Gilmer, being in fairly good health and of sound mind, do, of my own free will and accord, without being influenced by any one, will and direct that my estate, after my death, be divided and disposed of as set out herein, and I hereby appoint my brother, Jno. W. Gilmer, Jr., executor without bond to see that the conditions of this will are complied with.

"1st. I will and direct that all real estate and personal property owned by me, except my stock in Gilmer Grocery Company, be delivered to my wife, Alice Rogers Gilmer, immediately without limitation or conditions.

"2nd. It is my wish and desire that a director meeting of the Gilmer Grocery Company be held as soon as possible and practical, and that Jno. W. Gilmer, Jr., be elected as president of the company to succeed me.

"3rd. Jno. W. Gilmer, Jr., as executor of my estate, shall have the right and full power to vote my stock in all stockholders' meetings until said stock is otherwise disposed of in accordance with the terms of this will.

"4th. After my successor has been elected and assumed his duties as president of Gilmer Grocery Company, the executor of my estate is directed to deliver certificate of stock covering one thousand shares in Gil-

mer Grocery Company to the secretary-treasurer of Gilmer Grocery Company, and cause stock certificates to be issued for the said one thousand shares as follows:

"Five hundred shares or fifty thousand dollars stock at par value to my wife, Alice Rogers Gilmer, and five hundred shares or fifty thousand dollars worth stock at par value to my brother, John W. Gilmer, Jr., which is given them without limitations or conditions.

"5th. After the terms of this will have been complied with this far the executor will still have in his possession all Gilmer Grocery Company stock held by me over and above one thousand shares which I direct to be handled as follows:

"Have the stock transferred to J. W. Gilmer, Jr., as executor, the stock to be held intact until my debts, if any, have been paid, and until Vivian Louise and 'Billy' Devere Gilmer become of age. All dividends or income from said stock shall be used to pay my debts, if any, until they have been paid in full, and then said dividends or income from said stock shall be turned over to my father and mother jointly as long as they both live, and to either one of them in case of death of the other, said funds to be used by them for their comfort and pleasure. After the death of my father and mother and after the two above-named beneficiaries have become of age, said stock shall be equally divided between them.

"6th. Should my father and mother both die before the beneficiaries become of age, the executor shall use dividends or income from said stock to educate his children or reinvest for them as he thinks to their best interests.

"Given under my hand this fourth day of September, 1926.                                    M. D. Gilmer."

According to the inventory of the executor, the total value of the estate bequeathed under the terms of this will, being all of the estate, was approximately one hundred thirty-five thousand dollars. There was cash in

bank amounting to three thousand seven hundred twenty-two dollars and eighty-one cents. There was no real estate and the personal property passing under item 1 of the will to the widow, Alice Rogers Gilmer, was, approximately six thousand dollars. The testator and his wife had no children. The items conveyed under section 1 of the will, together with one thousand three hundred shares of stock in the Gilmer Grocery Company of the par value of one hundred dollars per share, or one hundred thirty thousand dollars, constituted the entire estate. The executor delivered to the widow all the property bequeathed by item 1 of the will, except he retained one thousand seven hundred thirty-six dollars and thirty-three cents which was the exact amount of the funeral expenses, and said sum is the basis of this lawsuit.

The widow, Mrs. Alice Rogers Gilmer, filed her petition in the chancery court in the administration matter, praying that the executor be required to turn over this amount of cash as bequeathed to her under the terms of item 1 of the will. The executor and the other legatees joined in an answer to this petition, setting up that the costs of administration had to be paid, also funeral expenses, inheritance taxes, and the widow's allowance of two thousand four hundred dollars, and that there was no specific direction in the will, or any item thereof, for the payment of these items showing a total of five thousand four hundred eighty-nine dollars and thirty-one cents, exclusive of commissions, court costs, and attorney's fees, which had not yet been determined. The executor and his associates also set up that the first item of the will constituted the residuary clause thereof, and that the provision in item 5 for the payment of the testator's debts did not cover the items of inheritance taxes, widow's allowance, costs of administration, attorney's fees, etc., or any charges against the estate of the deceased, and also set up that the directions of the will

had been complied with; that John W. Gilmer, Jr., had promptly been elected president of the Gilmer Grocery Company as the successor of the testator, and that he immediately proceeded to exercise his power as such president; that he had delivered the certificates of stock, consisting of one thousand shares, to the secretary and treasurer of the Gilmer Grocery Company, and had the stock issued, five hundred shares or fifty thousand dollars of stock, in the name of, and to the widow, Alice Rogers Gilmer, and five hundred shares, or fifty thousand dollars of stock, to himself, individually, and that he had complied with item 5 by having the remaining shares of stock, three hundred shares, transferred to J. W. Gilmer, Jr., as executor.

The record further shows that at the date of the execution of the will the testator owned one thousand four hundred and sixty-nine shares of stock in the Gilmer Grocery Company, and within a very short time after the execution of the will he sold one hundred and sixty-nine shares of said stock and liquidated a certain indebtedness.

There was some contention as to two weeks' salary, five hundred dollars, of the decedent; but, as that was not decided by the chancellor in the court below, we make no further reference to it.

The court below held that the widow, by virtue of item 1 of the will, was entitled to all the cash in the bank, and to have turned over to her the amount of one thousand seven hundred thirty-six dollars and thirty-three cents, free from any claims arising in the course of the administration. The executor and the other legatees, appellants, prosecuted the appeal here; Mrs. Alice Rogers Gilmer being the appellee.

The precise question presented for decision involves a construction of the will as to where the burden, the costs of administration, and claims arising after death of the testator against his estate, not included as a part

of his debts, should rest. The widow contends that item 5 is the residuary clause, and as such, not only is charged with the payment of the debts of the testator, but also with the costs of the administration and other claims in that class. The appellants insist that item 1 is a disposition of the *residuum*, constituting the residuary clause of the will, and that the estate bequeathed therein should be charged with these items of costs, etc. They further insist that the indebtedness charged against the legacy bequeathed in item 5 amounts to about twenty thousand dollars, and that the legacy in item 5 would be totally abated; that the will manifests that the testator did not intend to cut off his father and mother, but he intended that they should have the income from the stock bequeathed in said item, and intended that the *corpus* thereof should be finally coming to the children of the executor, the nephew and niece of the testator.

Counsel engaged in this case earnestly argue their respective contentions, that their clients take specific legacies by the terms of the will, and that the other legacies, as the case may be, are residuary legacies to be abated for the payment of the expenses here involved.

There are certain well-settled rules of construction which must be brought to bear when the construction of a will is involved. They are of very great importance and aid where no provision is made for the payment of demands which arise after the death of the testator, and which must be paid. This will is not free from difficulty, although written by a business man, with, apparently, a clear idea of the disposition he desired to make of his estate.

It is always the earnest desire of the courts to carry out the intention of a testator as that intention is gleaned from the instrument itself; but it is manifest that the testator, in the will before us, made no provision, and had no intention, with reference to the claims which must be paid, as set up by the executor in his defense to the

petition of the widow. Courts generally, everywhere, are averse to construe legacies as being specific, and it must be clearly apparent that the testator intended that a particular thing should be delivered to a legatee, before the court will construe a legacy to be specific, and it will only be declared to be specific if the intention is gathered from the will that the testator intended to burden a specific fund with a specific gift or a particular thing. Under those circumstances, only, will legacies be declared to be specific. *Malone* v. *Mooring*, 40 Miss. 247. In *Fisk & McNiel, Executors,* v. *McNiel,* 1 How. 535, Chief Justice SHARKEY held as follows:

"Legacies are only regarded as specific (1) when a particular chattel is specifically described, so as to be distinguishable from all others; and (2) something of a particular species."

In the case of *Currie* v. *Murphy,* 35 Miss. 473, Chief Justice SMITH, as the organ of the court, held that the costs of administration, funeral expenses, etc., are payable out of the *residuum* when not otherwise provided for by the testator.

It is quite well settled that the courts do not construe that a legacy is specific unless it is clearly so, for the reason that specific legacies may be adeemed by testators, and a general legatee has greater protection from the risk of ademption; and courts generally, and this court is in line with them, are disposed to construe legacies to be general rather than specific, unless there is a plain intent on the part of the testator deducible from the will to specifically bequeath his property. A general legacy may be defined as one which is payable out of the general assets of a testator's estate, such as a gift of money, or other thing in quantity, and not in any way separate or distinguished from other things of like kind. To be general, the legacy must not amount to a bequest of a particular thing differentiated from all others of the same kind, the delivery of which, alone, would fulfill the intent

of the testator. 28 R. C. L., section 264, and authorities there cited.

We feel safe in construing the several items of the will to be general rather than specific legacies, because it is so perfectly manifest that the testator had clearly in mind the quantity, quality, and character of his estate, and the objects of his bounty, and that, therefore, it could hardly be said that there is a manifest intention to charge the demands here involved against any particular item . of the estate. No *residuum* was set up by the testator in either items 1 or 5.

Now, let us critically analyze the situation: The testator did not expect that item 1 would be charged with all the costs of administration, etc., for the reason that it was futile to so carefully provide for the disposition of the property in item 1 when, as a business man of the acumen displayed in the language of the will itself, that would mean that the entire legacy was abated if charged with payment of the allowance to the widow of the funeral expenses, court costs, inheritance taxes, etc., to say nothing of attorney's fees and commissions to the executor. What we have said applies, with equal force, to item 5 of the will. The testator had provided in other items that his wife and brother should have large shares of his estate; he had in mind his father and mother, and his nephew and niece, and he would have known, and did know, that, if the burden here sought to be imposed was impressed on the bequest disposed of in item 5, nothing would remain from which to create an income for his father and mother, or any estate after their death for the niece and nephew, because it is apparent that only a trifling sum would be available as income for his father and mother, and, finally, an estate for his niece and nephew.

There is no difference between a bequest of stock and money in bank, unless this stock be so described as to designate particular stock distinguished from other stock,

and the mere statement that a number of shares of stock in a corporation is bequeathed will not demonstrate a bequest as specific. Applying the definition of a specific bequest as announced by Judge SHARKEY, the bequest of stock here disposed of in the several items of the will must be held to be general bequests and not specific. In the case at bar, the fact that the identical shares owned by the testator at the time of his death were directed to be surrendered to the corporation, and new and different shares of stock were to be issued by it, is decisive, we think, of the question that these legacies are, none of them, specific.

There is no way for us to say that any particular share of stock in the Gilmer Grocery Company was specifically devised to the widow, J. W. Gilmer, Jr., or the other legatees; and, likewise, it cannot be said that any of the legatees took any particular share of stock. 28 R. C. L., section 268, pp. 293, 294, and authorities there cited.

The legacies in the several items of this will are general and not specific, and, that being true, the legatees taking under the several items are to be treated alike. All of the several legacies must be abated *pro tanto,* in order to proportionately provide for the costs of administration, funeral expenses, inheritance taxes, attorney's fees, commissions, etc., not in any wise provided for in the will. The court will treat the legacies as being general, and each of the legacies will be ratably taxed with the charges hereinabove described, as ascertained by the court, against the shares of the legatees ratably to the entire sum to be distributed, and this cause will be remanded to the lower court to be proceeded with as herein directed.

*Reversed and remanded.*