SMITH, Justice.
This is an appeal by Julius (Jack) Baum and Gordon Baum from a decree of the Chancery Court of Madison County construing the will and the codicils thereto of Mrs. Maxine S. Loeb, deceased.
The will was executed on June 29, 1963, and holographic codicils were executed on August 26, 1963, May 28, 1964, and October 13, 1964, respectively. Mrs. Loeb died April 28, 1965. •
The testatrix was possessed of a substantial personal estate, which included a great many shares of the stock of a number of' corporations. By her will and the three codicils, Mrs. Loeb disposed of 1311 shares; of stock in 13 corporations to 23 legatees.
On June 28, 1963, the date on which her will was executed, the testatrix owned 128' shares of Eastman Kodak Company stock and 50 shares of F. W. Woolworth Company stock.
Item V of the will contained 22 bequests of corporate stock, including the following:
Lt. Joe Baum — 50 shares Eastman Kodak stock
*616 Jack Baum — 15 shares Eastman Kodak stock
Gordon Baum — 45 shares Eastman Kodak stock
Samuel G. Loeb — 10 shares Eastman Kodak stock
Jack Baum — 50 shares Woolworth stock
This appeal challenges the chancellor’s construction of the effect of above bequests to appellants, Jack (Julius) Baum and Gordon Baum of Eastman Kodak and Woolworth stocks.
Of 128 shares of Eastman Kodak stock owned by the testatrix on the date of the will, she bequeathed 120 shares, as shown above, leaving 8 shares undisposed of by the will. Of 50 shares of Woolworth stock owned at that time, all were bequeathed under the will to Jack Baum.
On August 26, 1963, Mrs. Loeb executed the first codicil to her will without mentioning Eastman 'Kodak or Woolworth .stocks.
On February 10, 1964, Mrs. Loeb acquired 6 additional shares of Eastman Kodak ■stock, probably as a stock dividend, but its source is not disclosed by the record. This increased the undisposed of shares of Eastman Kodak stock then owned by Mrs. Loeb to 14.
On May 27, 1964, as a result of a 3 for 1 “stock split”, Mrs. Loeb acquired 100 additional shares of Woolworth stock, the par value being reduced from $10 to $3i/á per share.
On May 28, 1964, Mrs. Loeb executed a second codicil to her will, and, as in the first codicil, neither Eastman Kodak nor Woolworth stock was mentioned. On that date Mrs. Loeb owned 134 shares of Eastman Kodak stock and 150 shares of Woolworth stock.
On October 13, 1964, Mrs. Loeb executed the third and final codicil to her will. By this document, she bequeathed 5 shares of Eastman Kodak to one Mel Martin.
Upon the execution of this last codicil, Mrs. Loeb had bequeathed 125 shares of Eastman Kodak stock to five different legatees, including appellants, leaving 9 shares not bequeathed.
On November 19, 1964, the Board of Directors of Eastman Kodak declared a 2 for 1 stock split which was approved by the stockholders and became effective on April 27, 1965. Thereupon Mrs. Loeb became the owner of a total of 268 shares of Eastman Kodak stock, of which 125 shares had been expressly bequeathed and 143 had not.
The will contained a residuary clause which provided that all property not expressly devised was bequeathed to Jeanette Hammer, a niece, Lois Martin, a niece, Maxine Baum, a great-niece, and Jeanette Branson, a niece.
A petition for construction of the will and its three codicils was filed by the executor-appellee, James F. Branson. The chancellor heard the matter and entered the decree construing those documents from which the present appeal has been prosecuted. That decree also affected similar bequests made to several other persons named in the will and codicils, but they have not appealed.
The issues now before this Court are: shall Julius (Jack) Baum receive 50 shares of Woolworth stock, which was the number of shares expressly bequeathed to him under the will, or, shall he receive the entire 150 shares owned by Mrs. Loeb at her death, and shall he and Gordon Baum receive only the 15 and 45 shares of Eastman Kodak expressly bequeathed to them, respectively, under the will, or shall they receive the increased number of shares owned by Mrs. Loeb at the time of her death as the result of the stock split.
The court below held that these two legatees, (appellants here) were entitled only to the number of shares expressly bequeathed them under the will and that the additional shares, which had accrued to Mrs. Loeb from the stock splits (and had not *617 been otherwise expressly disposed of), comprised a part of Mrs. Loeb’s residuary estate and passed to the residuary legatees under the will.
It is conceded that effect must be given to the intention of the testatrix, if it can be determined. See Lane v. Vick, 44 U.S. (3 How.) 464, 11 L.Ed. 681 (1845); Yeates v. Box, 198 Miss. 602, 22 So.2d 411 (1945); Howell v. Ott, 182 Miss. 252, 180 So. 52, 181 So. 740 (1938); National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933); Simpson v. Watkins, 162 Miss. 242, 139 So. 400 (1932); Keeley v. Adams, 149 Miss. 201, 115 So. 344 (1928); Davenport v. Collins, 96 Miss. 716, 51 So. 449 (1910).
This is to be ascertained from the testamentary documents themselves, if possible, with the aid of established rules of construction. However, in Schlottman v. Hoffman, 73 Miss. 188, 199, 18 So. 893, 895 (1895), this Court held:
It is a well-settled canon for the construction of wills that the court will take into consideration the attending circumstances of the testator, the quantity and character of his estate, the state of his family, and all facts known to him which may reasonably be supposed to have influenced him in the disposition of his property.
See Countiss v. King, 149 Miss. 70, 115 So. 109 (1928).
Considerable portions of the briefs in the case are devoted to a discussion of whether the original bequests contained in the will were specific or general legacies. Appellants contend that the bequests were specific and operated to pass to the named legatees the entire number of shares owned by Mrs. Loeb at her death, and included those which had resulted from the stock splits. In support of that theory, they cite: Bireley’s Adm’rs v. United Lutheran Church, 239 Ky. 82, 39 S.W.2d 203 (1931); In re Mandelle’s Estate, 252 Mich. 375, 233 N.W. 230 (1930); Chase Nat. Bank v. Deichmiller, 107 N.J.Eq. 379, 152 A. 697 (1930), and other authorities.
As opposed to this, appellee argues that such bequests were general and carried only the number of shares expressly stated in the will, and that such bequests did not embrace additional shares subsequently acquired by Mrs. Loeb by virtue of the stock splits, notwithstanding that such splits had the effect of diminishing the par value of each share. Appellee cites Gilmer v. Gilmer, 151 Miss. 33, 117 So. 830 (1928); McGuinness v. Bates, 345 Mass. 632, 189 N.E.2d 212 (1963); In re Woodward’s Estate, 407 Pa. 638, 182 A.2d 732 (1962). In Gilmer, supra, this Court said:
It is always the earnest desire of the courts to carry out the intention of a testator as that intention is gleaned from the instrument itself; but it is manifest that the testator, in the will before us, made no provision, and had no intention, with reference to the claims which must be paid, as set up by the executor in his defense to the petition of the widow. Courts generally, everywhere, are averse to construe legacies as being specific, and it must be clearly apparent that the testator intended that a particular thing should be delivered to a legatee, before the court will construe a legacy to be specific, and it will only be declared to be specific if the intention is gathered from the will that the testator intended to burden a specific fund with a specific gift or a particular thing. Under those circumstances, only, will legacies be declared to be specific. Malone v. Mooring, 40 Miss. 247. In Fisk & McNiel, Executors v. McNiel, 1 How. 535, Chief Justice Sharkey held as follows:
“Legacies are only regarded as specific (1) when a particular chattel is specifically described, so as to be distinguishable from all others; and (2) something of a particular species.” 151 Miss. at 39-40, 117 So. at 832-833.
*618 It is argued by appellee that Gilmer, supra, is directly in point here and is dis-positive of the issue in the present case. However, neither Gilmer nor any of the cases cited involved a factual situation such as that now under consideration.
In the present case, execution of each of the three codicils had the effect of republishing Mrs. Loeb’s will as of its respective date.
In this situation, it becomes unnecessary to decide whether the original bequests in the will, standing alone, were general or specific when made. In considering the question, the chancellor reviewed the changes in Mrs. Loeb’s estate, and her method of dealing with the shares of stock she owned at the time the will was made as well as those of which she later became the owner as the result of stock splits. The chancellor concluded that Mrs. Loeb, in her attitude toward such subsequently acquired shares, demonstrated that she did not consider that the bequests in the will included the latter, but dealt with such subsequently acquired shares as items of personalty comprising a part of her undisposed of estate and possessing an identity separate from those shares originally bequeathed.
The general rule is stated in 57 Am.Jur. Wills section 626 (1948), as follows:
A duly executed codicil operates as a republication of the original will and makes it speak from the new date, in so far as it is not altered or revoked by the codicil, although the codicil is not physically annexed to the will, and although the will is not in the presence of the testator at the time of executing the codicil, where it refers to the will in such a way as to identify that instrument beyond doubt. If a codicil revokes in terms portions of the will, it republishes the will as of the date of the codicil in respect to all parts not revoked.
This rule has been followed in Mississippi. Hogan v. Sillers, 246 Miss. 574, 577, 151 So.2d 411, 412 (1963). In that case, the Court said:
The general rule prevailing in a majority of states is that a properly executed codicil operates as a republication of an earlier will or codicil no matter what defects may have originally existed in the execution of the earlier document. This broad rule is supported by cases from at least twenty-two jurisdictions. 21 A.L:R. 2d 322. This Court has not passed upon this question but we are of the opinion that the general rule just stated, and which is supported by the great weight of authority elsewhere, is sound and should be adopted. In the case of Taft v. Sterns [Stearns], 230 [234] Mass. 273, 125 N.E. 570, it is stated that the principle that a validly executed codicil constitutes a republication of the will does not rest upon the presence in the codicil of technical words in terms of affirming and republishing the original will, but upon the broader consideration that the execution of the instrument denominated as codicil imports in the mind of the person executing the codicil the existence of a will which can be supplemented and modified. We are of the opinion that common sense requires the adoption of the rule that a valid codicil constitutes a republication under the circumstances existing in the present case.
Under the above doctrine, Mrs. Loeb’s will and the codicils which she subsequently executed during the period of almost two years which intervened between the date of its execution and her death, must be considered together, and it has been stated:
(T)hat a codicil executed with the formalities required by statute for the execution of wills operates as a republication of the will, and is in effect the making of a new will, as far as it is not altered or revoked by the codicil, if the codicil is valid, and if the intention of the testator is not thereby defeated * * *. 95 C.J.S. Wills § 303 (1957).
*619 In the absence of intrinsic evidence in the documents themselves of the testamentary intent, we think the chancellor properly took into consideration what Mrs. Loeb actually had done as being demonstrative of what her intention was in making testamentary disposition of her estate.
It is not the Court’s function to amend the will under the guise of interpreting it. It must be construed as written and speaks as of the date of Mrs. Loeb’s death. There in an absence of evidence, to be drawn either from the four corners of the will or from the language of the bequests themselves to indicate an intention on the part of Mrs. Loeb that the original legacies of stated numbers of shares should also embrace shares she might afterward acquire as a result of stock splits. Moreover, the existence of such an original intention is, to some extent, negated by the three subsequent testamentary dispositions made by Mrs. Loeb, in some cases after stocks originally bequqaimed had been split and she had become the owner of the increased number of shares.
Mrs. Loeb did not see fit, in any event, for whatever reason, to increase the original bequests of stock shares to appellants, nor to others similarly situated (who have not appealed) to whom, in her will, she had bequeathed stated numbers of shares of stock in other corporations. In fact, in at least one case, following a stock split, in her final codicil, she made separate bequests of shares received as a result of a split to legatees other than those to whom she had bequeathed the original shares in her will. For example, and as indicative of her viewpoint with reference to shares received from stock splits, Mrs. Loeb bequeathed all 51 of her shares of American Telephone and Telegraph Company stock to legatees named in her will. On June 1, 1964, this stock split 2 for 1, with par value reduced from $33)4 to $162/3 per share. Thus, her situation with respect to her AT&T stock was closely analogous to that which existed as to Eastman Kodak. By codicil dated October 13, 1964, Mrs. Loeb made bequests of 26 and 27 shares, respectively, of this AT&T stock to new beneficiaries.
In this case, Mrs. Loeb appears to have been a woman who was thoroughly acquainted with stock transactions and fully understood her right to alter her will at pleasure and at any time as is clearly demonstrated by the three holographic codicils she executed and in which, in fact, a number of changes were made.
We find no basis for supposing that Mrs. Loeb did not understand the nature, value or extent of her estate or that she would hesitate to make any change in earlier testamentary dispositions of items comprising it if necessary to effect her desires. Nevertheless, the case has not been without difficulty, and well reasoned, although opposing arguments, supported by authority, have been advanced by each side as to the correct interpretation of the testamentary bequests of stated numbers of shares of corporate stock which are afterwards split.
We express no opinion as to what the result might have been but for the special circumstances which supervened in this case after the execution of the original will and before the death of the testatrix, including the execution of the three codicils, each of which had the effect of republishing the will, under the changed circumstances, as of its date. The codicils themselves, in the light of the record, serve to support the chancellor’s finding of a testamentary purpose on the part of Mrs. Loeb to treat additional shares resulting from stock splits as separate items of her personal estate which she did not consider disposed of under the original will. She omitted to enlarge the number of shares originally bequeathed to appellants and we can not supply that omission.
The chancellor correctly held that the bequest to each of the appellants is limited to the number of shares specified in the original will and did not include any in *620 crease resulting from the subsequently occurring stock splits.
Affirmed.
GILLESPIE, P. J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.