465 So.2d 1073 (1985)
SHRINERS HOSPITALS FOR CRIPPLED CHILDREN
v.
Reese A. COLTRANE and Lena F. Coltrane, Co-Executors, Estate of Frances O'Neill Gordon, Deceased.
No. 54587.
Supreme Court of Mississippi.
March 13, 1985.
*1074 David S. Raines, Lyle M. Page, Page, Mannino & Peresich, Biloxi, for appellant.
Walter J. Phillips, Gex, Gex & Phillips, Bay St. Louis, for appellees.
Before PATTERSON, C.J., and SULLIVAN and ANDERSON, JJ.
PATTERSON, Chief Justice, for the Court:
This is an appeal from a Decree Construing the Will and Establishing Heirship of Mrs. Frances O'Neill Gordon, by which the Chancery Court of the Second Judicial District of Harrison County awarded the residual estate to the heirs at law of the testatrix. A legatee under the will, Shriners Hospitals for Crippled Children, perfected this appeal with the following assignments of error:
I. The chancellor erred in finding that 200 additional shares of stock in Exxon Corporation, and 20 additional shares in Nabisco Brands, received as a result of stock splits, were a part of the residuary estate which should be distributed to the heirs at law;
II. The chancellor erred in finding that an additional share of stock in Nabisco Brands, received as a stock dividend, was a part of the residuary estate which should be distributed to the heirs at law.
On December 4, 1981, the Last Will and Testament of Frances O'Neill Gordon together with the first codicil thereto were admitted to probate. With certain non-dispository portions omitted, the will is set out below:
Biloxi, Miss. 19 Nov. 1973
I, Frances O'Neill Gordon, being of sound mind, memory and body, do hereby declare this my Last Will and Testament, revoking all other wills... .
To Shriners Crippled Children's Hospital, Shreveport, La., I give and bequeath the proceeds from sale of my two diamond rings (1) .58 cr. surrounded by twelve small diamonds; (2) 1 1/2 cr. surrounded by 22 small round diamonds. Proceeds from sale of my house at 519 Santini St., Biloxi, Miss. plus contents  less anything which Lena may want. House not to be rented before sale.
Balance of my late son's life insurance in Golden Passbook # 103-5781, Hancock Bank, Gulfport, Miss.
Collection of silver coins in Safety Deposit Box # 121 First Miss. Nat'l Bank, Biloxi, Miss. together with the following shares of common stock  also in Box # 121.
246 shares Sears Roebuck & Co. 246 shares Sears, Roebuck & Co. 108 shares Greyhound 100 Shares Exxon Corp. 100 shares Exxon Corp. *1075 80 shares General Foods 80 shares Middle South Utilities 60 shares General Motors 20 shares Nabisco (N.B.C.)
Request Shriners Hospital, Shreveport, La. erect a suitable plaque in memory of John Lyde Wilson Gordon, Sr. and John Lyde Wilson Gordon, Jr.
To my dear and good friends Lena F. and Reese Coltrane, 408 Fairway Drive, New Orleans, La., I give and bequeath 120 shares common stock in Proctor & Gamble Co.; my current automobile; the balance in my Hancock Bank checking account; balance in savings account # XXXXX Guaranty Savings & Homestead, N.O., La. Two accounts to be used for their expenses in handling my affairs for me.
I appoint and ask that Lena F. and Reese A. Coltrane together or individually be my executors, without bond, for this estate.
... My friends Lena and Reese Coltrane know my wishes and have complete authority to act in my behalf and have agreed to do so.
... Reese and/or Lena may give the stocks directly to the Children's Hospital or sell and give them the proceeds  whichever is most advantageous .. . Signed  Frances O'Neill Gordon
The notation dated July 1977, indicated that an additional 246 shares of Sears, Roebuck & Co. stock and an additional 100 shares of Exxon Corporation stock were to be added to the Shriners Hospitals' legacy.
A codicil dated September 7, 1980, states in part:
Funds of Golden Passbook, Hancock Bank, used to purchase certificates of deposit in Guaranty Homestead, N.O. La. together with other funds already on hand.
The money not needed for expenses in closing estate will be added to funds for the Shriners Crippled Childrens Hospital, Shreveport, La.
My jewelry has been sold and I have used the money...
On June 11, 1982, Executors Reese A. and Lena F. Coltrane filed a Petition for Construction of Will, asking the court to decide who should take the additional shares created by certain stock splits and a dividend declared between July, 1977, and the testatrix' death. This petition averred:
It was the intent of the testatrix to leave all stock owned by her at the time of her death, with the exception of 120 shares of Proctor & Gamble stock specifically bequeathed to Reese and Lena Coltrane, to the Shriners Hospitals for Crippled Children, and for such reason the testatrix did not include a residuary clause in her will or the codicil thereto .. .
Mrs. Gordon's surviving heirs at law (a sister, Marjorie O'Neill Rucker; two nephews, John F. O'Neill, III and William Marion Ryan; and a niece, Elizabeth Ryan Green) filed a separate Answer, as did Shriners Hospital. The surviving heirs' legal contention is that they were entitled to the additional shares of stock created by the stock split and one share paid as a dividend. The Crippled Childrens Hospitals' position is that they were legally entitled to the value of the additional shares because this comports with the intent of the testatrix by the terms of the will.
After hearing and argument by counsel, the court observed the testatrix was a "very meticulous" person who "had to be aware that a stock split could occur." Further, since she did not mention how the shares should be distributed in case of a stock split, and because there was no residual clause in the will, the court ruled the parties were "bound by the specific numbers of stock that she specified." The decree therefore provides in part:
The Court finds that the Testatrix did not dispose of the additional shares [of stock in Exxon Corporation and in Nabisco Brands], and that the Testatrix was a very careful individual, who would have made a Codicil to her Will had she intended the additional shares received to be distributed to Shriners Hospitals. The court therefore finds that the additional *1076 shares received after July, 1977, are a part of the residuary estate.
The court's duty in a will construction case is stated in Matter of Will of Griffin, 411 So.2d 766, 767 (Miss. 1982), as follows:
... [T]o ascertain and give effect to the testator's intentions. In arriving at such intention the court must, if possible, consider the entire document rather than a particular sentence, clause, phrase or word. Malone v. Malone, 379 So.2d 926 (Miss. 1980); Cross v. O'Cavanaugh, 198 Miss. 137, 21 So.2d 473 (1945).
Therefore, the issue here is whether the lower court erred in concluding that Mrs. Gordon intended the additional shares in Exxon and Nabisco to pass to her heirs at law and not to Shriners Hospitals. In answering this question we are mindful of several pertinent rules of construction.
First, although a will speaks as of the time of the testator's death, the testator's intent is manifested as of the time the will is executed. Riegelhaupt v. Ostroffsky, 237 Miss. 521, 528, 115 So.2d 331, 334 (1959). It follows that the will must be construed "in the light of circumstances surrounding testator at the time the Will was written." Hemphill v. Robinson, 355 So.2d 302, 307 (Miss. 1978).
Other principles useful to this inquiry but not necessarily controlling are the presumption against intestacy, Richardson v. Browning, 192 So.2d 692 (Miss. 1966), and the presumption in favor of "those beneficiaries who appear to be the special objects of the testator's bounty... ." New Orleans Baptist Theological Seminary v. Lacy, 219 So.2d 665, 672 (Miss. 1969). However we emphasize our primary guidance comes from the rule that the testator's intention, to be determined from the language of the whole will, is controlling unless invalid under the law. May v. Hunt, 404 So.2d 1373 (Miss. 1981); Rice v. McMullen, 207 Miss. 706, 43 So.2d 195 (1949).
We now consider the will, as it was written under the circumstances existing when it was written, in order to ascertain Mrs. Gordon's intention regarding the additional shares of stock. We first observe the record indicates the will disposes of all Mrs. Gordon's property of value and contains no residuary clause. In our opinion these facts along with the presumption against intestacy strongly indicate that the testatrix did not intend any of her property to pass according to the law of intestate succession. To the contrary, she desired her will to dispose of all her possessions, because she devised all things of value at the time of writing the will, thereby excluding, in our opinion, any intention of leaving intestate assets.
It is likewise evident Mrs. Gordon did not wish her heirs at law to share in her estate because the "special object" of her bounty was Shriners Hospitals, to whom she willed the bulk of her estate. The Shriners Hospitals' legacy at the time of execution of the will included Mrs. Gordon's entire proportional interest in Nabisco and Exxon.
In view of the foregoing deductions, we perceive no evidence of any intent on the part of the testatrix that any part of her estate should pass to her heirs at law. Rather our opinion is Mrs. Gordon intended Shriners Hospitals to take her entire proportional interest in Nabisco and Exxon. Additionally, we are of the opinion the court's observation that Mrs. Gordon was a "very careful individual, who would have made a codicil to her will had she intended the additional shares received to be distributed to Shriners Hospitals" was a conclusion which is not supported by the record. Stated differently, we think the testatrix's intention must be ascertained from what she wrote rather than what she might have written. Based on the foregoing analysis, our opinion is the case must be reversed to give effect to Mrs. Gordon's legally expressed intentions.
Because we have addressed the precise question of disposition of additional shares received as a result of stock splits between the execution of the will and the death of the testatrix, we think a comment on In Re Will of Loeb, 206 So.2d 615 (Miss. 1968), is *1077 in order. In that case the testatrix disposed of a specified number of shares of stock to named legatees. Subsequently she executed three codicils, "in some cases after stocks originally bequeathed had been split and she had become the owner of the increased number of shares." 206 So.2d at 619. The court held the testatrix' intent was to bequeath only the specified number of shares to the named legatees; therefore, the additional shares created by the stock splits passed to the residuary legatees under the will.
However, we distinguish Loeb on several points:
(1) Mrs. Loeb did not dispose of her entire interest in the corporations in question, while Mrs. Gordon's original will bequeathed her entire interest in both Nabisco Brands and Exxon to Shriners Hospitals.
(2) Codicils executed after the stock splits in the Loeb case failed to dispose of the additional shares; however, Mrs. Gordon made a holographic notation on the will in July, 1977, indicating that additional shares in Sears, Roebuck and in Exxon, which had been created by stock splits, were to be added to the Shriners Hospitals' legacy.
(3) In the third codicil to her will, executed after Mrs. Loeb received six additional shares of Eastman Kodak stock, she bequeathed five shares of this stock to a new legatee.
(4) Mrs. Loeb's will contained a residuary clause, while Mrs. Gordon's did not.
In conclusion, we are of the opinion the facts of Loeb when compared to the facts of this case indicate Mrs. Loeb's intent was different from that of Mrs. Gordon. For these reasons, we reach a different result in this case.
We are of the further opinion our above statements and conclusions have similar application to the additional share of stock coming into the estate by way of stock dividend.
REVERSED AND RENDERED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.