910 So.2d 1214 (2005)
Donna F. ROUSSEAU, as Executrix of the Estate of Robert Louis Rousseau, Deceased, Appellant,
v.
Christopher Louis ROUSSEAU and William Derek Rousseau, Appellees.
No. 2004-CA-01469-COA.
Court of Appeals of Mississippi.
September 6, 2005.
*1215 Dennis W. Voge, Tupelo, attorney for appellant.
Wayne Doss, William M. Beasley, Tupelo, attorneys for appellees.
Before KING, C.J., BARNES, and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. The chancellor decreed that specific real property had not been disposed of by the testator's will, and that a specific bequest of shares of stock had been adeemed by extinction. The chancellor further decreed that the title to the specific real property, and the value paid to the testator *1216 after his death for his inter vivos transfer of title to the shares of stock, were to pass according to the law of intestate succession. Finding no error, we affirm the chancellor's decree.

STATEMENT OF FACTS
¶ 2. Robert Louis Rousseau (Testator) validly executed a will in December 1988 in which he named his wife, Donna F. Rousseau (Executrix), as his executrix. Testator died in November 2000, and Executrix filed a petition in the Lee County Chancery Court to probate Testator's will. The petition was subsequently granted in December 2000.
¶ 3. In January 2002, Testator's sons, Christopher Louis Rousseau and William Derek Rousseau (Devisees), filed a petition to construe the will and distribute the assets. The Devisees alleged a dispute as to the construction of Testator's will. Specifically, Devisees asserted that after Testator's will was executed, a specific bequest of shares of Lucky Star Industries, Inc. stock had become adeemed by extinction as a result of Testator's inter vivos transfer of title to the specific shares of stock.[1] Devisees further asserted that because the will contained no residuary clause, the value received for those shares of stock after Testator's death must pass according to the law of intestate succession. In April 2004, Devisees filed a second petition with the court asking that Testator's will also be construed in order to determine the disposition of a specific parcel of real property (Baldwyn Property) in which the Testator, the Testator's mother, and the Testator's brother each owned a fractional interest at the time of Testator's death.[2] Devisees asserted that the Baldwyn Property was not addressed in the will, and therefore, Testator's interest in that property must also pass according to the law of intestate succession. Executrix, however, maintained that the will directed that both the future proceeds from the sale of the shares of stock, and the ownership interest in the Baldwyn Property, were to be placed in a trust, and that all trust income was to be payable to Executrix during her lifetime.
¶ 4. In June 2004, a hearing was conducted, and the chancellor subsequently decreed that from the time of Testator's death, the value received as proceeds from Testator's inter vivos transfer of title to the shares of stock was to pass under the laws of intestate succession, and that Devisees each own a one-fourth interest in those proceeds. The chancellor further decreed that title to the Baldwyn Property must pass under the law of intestate succession, and that Devisees each own a one-eighth interest in the Baldwyn Property.
¶ 5. Aggrieved by the chancellor's decree, Executrix appeals asserting the following: (1) whether the chancellor erred in properly construing the will in accordance with Testator's intent, and (2) whether the chancellor erred in determining that specific property was to pass according to the law of intestate succession.

ISSUES AND ANALYSIS

I. Whether the chancellor erred in properly construing the will in accordance with Testator's intent.
*1217 ¶ 6. Executrix asserts that the chancellor erred in decreeing that the shares of stock had been adeemed prior to Testator's death, and that the value received after his death, as well as the Baldwyn Property, must pass under the laws of intestate succession, rather than to the testamentary trust mentioned in the will. Devisees maintain that the shares of stock were intended as a specific bequest, and that their sale amounted to an ademption by extinction. Devisees maintain that since the stock was sold prior to Testator's death, and Testator did not mention in his will the disposition of the future proceeds from the sale, those monies received after his death must pass under the law of intestate succession. Devisees also maintain that since the Baldwyn Property did not satisfy the ownership interest criterion established by Testator himself in his will, it too must pass under the law of intestate succession. The relevant portion of the will which gave rise to this dispute reads as follows:
Item III
If my wife, Donna F. Rousseau, be living at the time of my death, I then give, devise and bequeath to my brother-in-law, L.E. Gibens, as trustee, all of my shares of stock in Lucky Star Industries, Inc., and any and all other real property in which I have a fractional interest with my mother, brother and sister, including any of such stock or real property which I may acquire through inheritance; to be dealt with as hereinafter directed.
...
¶ 7. Subsection (2) of Item III goes on to state that the income generated from the aforementioned trust is to be paid to Executrix during her lifetime in as nearly equal installments as practicable, and that upon Executrix's death, the assets of the trust are to be transferred, paid and delivered to Testator's children.
¶ 8. Before proceeding with our analysis, we turn to address the standard of review. The chancellor's findings of fact will only be reversed where they are unsupported by substantial evidence, or where the chancellor abused his discretion, was manifestly wrong, or clearly erroneous. In re Estate of Mathis, 800 So.2d 119, 121(¶ 7) (Miss.Ct.App.2001) (citing Smith v. Jones, 654 So.2d 480, 484 (Miss. 1995)). However, "`[w]hen presented with a question of law, ... [this Court] conducts a de novo review.'" In re Estate of Wright, 829 So.2d 1274, 1276(¶ 5) (Miss.Ct. App.2002) (quoting Matter of Estate of Homburg, 697 So.2d 1154, 1157(¶ 10) (Miss.1997)). Finally, "[t]his Court must determine if effect was given to the [testator's] intent when reviewing the decision of the chancellor." Matter of Estate of Homburg, 697 So.2d at 1157(¶ 11) (citing Tinnin v. First United Bank of Mississippi, 502 So.2d 659, 663 (Miss.1987)). The determination of testamentary intent, however, is limited to the wording employed within the four corners of the will. Matter of Estate of Homburg, 697 So.2d at 1157(¶ 11). The question of who is entitled to the payments specified in the assignment agreement, and to title of the Baldwyn Property, is an issue of will construction, and is therefore, a question of law which necessitates a de novo review by this Court. See In re Estate of Wright, 829 So.2d at 1276(¶ 5).
¶ 9. Returning to their respective arguments, Executrix asserts that it is obvious from the will that it was Testator's intent to make provisions for Executrix, his surviving spouse, after having made specific bequests of other assets in Item II of his will. Item II of Testator's will contains the following specific bequeaths to Executrix:

*1218 [M]y home which is located in the Natchez Trace Villas together with all the household goods, contents and furnishings therein, one Ithaca 20 gauge over and under shotgun and a .357 Smith and Wesson pistol ..., all motor vehicles owned by me at the time of my death, all deposits in either savings accounts or checking accounts standing solely in my name, savings bonds standing solely in my name and any Bank of Mississippi stock standing solely in my name....
¶ 10. Before proceeding with our analysis, we emphasize that "`[t]he surest guide to testamentary intent is the wording employed by the maker of the will....'" Matter of Estate of Homburg, 697 So.2d at 1157(¶ 11) (quoting Tinnin, 502 So.2d at 663). With that in mind, and after evaluating Testator's expressed intentions contained within the four corners of the will, we turn to address separately each disputed devise.

1. Shares of stock.

¶ 11. Executrix argues that ademption does not apply to the shares of stock, and that the facts of this appeal are analogous to those in Last Will and Testament of Redditt v. Redditt, 820 So.2d 782 (Miss.Ct.App.2002). After executing her will, the testatrix in Redditt executed a general power of attorney in favor of two of her sons. Redditt, 820 So.2d at 785(¶ 3). The sons then later exchanged a number of acres of testatrix's real property for shares of stock in Redditt Valley Farms, Inc. in order to minimize estate taxes. Redditt, 820 So.2d at 785-86 (¶¶ 3, 7). The sons did not involve the testatrix in the transaction because they believed she would not understand. Redditt, 820 So.2d at 785(¶ 3). After testatrix's death, one of the sons petitioned the court to hold that since the testatrix had conveyed the real property to Redditt Valley Farms, Inc., none of the land passed under the provisions of her will pertaining to real property, but instead, all of the land passed under the residuary clause. Redditt, 820 So.2d at 785(¶ 4). The trial court held that even though the land mentioned in the will was no longer owned by the testatrix, having been converted to shares of stock, the testatrix intended that the shares of stock were to be distributed as if they were acres of land. Id. On appeal, this Court, after a thorough review of the record, and the application of the maxims of equity, concluded that since the exchange of land for shares of stock had been done through the power of attorney, and without the testatrix's knowledge, she could not have intended to adeem the devises of real property contained within her will. Redditt, 820 So.2d at 788(¶ 15).
¶ 12. The facts of this appeal, however, are compellingly distinguishable from those involved in Redditt. In this case, it is clear that the shares of Lucky Star stock were a specific bequest. See Mississippi Baptist Found., Inc. v. Estate of Matthews, 791 So.2d 213 (Miss.2001); Gilmer v. Gilmer, 151 Miss. 33, 117 So. 830 (1928). It is equally clear, that at the time he executed his will, Testator intended for those shares of stock to be placed in trust for Executrix's benefit. However, the record also demonstrates that later Testator personally sold those shares of stock. See n. 1, supra. Furthermore, unlike Redditt, there has been no argument offered in this appeal, nor is there any evidence in the record, to support a conclusion that Testator was not fully aware of the nature of the sale of those shares of stock.
¶ 13. Devisees maintain that Mississippi law clearly supports the chancellor's finding that the monies due under the assignment agreement after Testator's death cannot pass under the specific bequest of the shares of stock. See Welch v. Welch, *1219 147 Miss. 728, 113 So. 197 (1927) (in order to make a specific legacy effective, the property bequeathed must be in existence and owned by the testator at the time of his death).
¶ 14. Despite assertions to the contrary, the Mississippi Supreme Court has recently made it clear that Welch is still the law of this state. Estate of Matthews, 791 So.2d at 218(¶ 20). "Ademption typically `occurs when a testator in his lifetime disposes of a piece of property he has specifically devised or bequeathed in his [w]ill. The effect is that the gift fails since the testator at his death did not own the property.'" Id. (quoting Robert A. Weems, Wills and Administration of Estates in Mississippi §§ 9-20, at 305 (2d ed.1995)).
¶ 15. Furthermore, after analyzing the entire language contained within the four corners of Testator's will, we conclude that Testator recognized and otherwise addressed the Welch holding, including when he generically bequeathed to Executrix in Item II "all motor vehicles owned by me at the time of my death, all deposits in either savings accounts or checking accounts standing solely in my name, [and all] savings bonds standing solely in my name...."
¶ 16. Based on the record before us, and on Testator's intent as expressed within the four corners of his will, we conclude that Testator wished to make specific provisions for his surviving wife, which included his bequeath of the shares of Lucky Star Industries, Inc. stock to Executrix, at the time he executed his will. We also conclude, however, that Testator subsequently made a knowing sale of his ownership interest in the shares of stock without making any corresponding changes to his will. Based on these facts, we find specifically that the case law supports the chancellor's decree that the specific gift of the shares of Lucky Star stock failed because Testator no longer owned that specific property at the time of his death. See Estate of Matthews, 791 So.2d at 218(¶ 20).

2. Baldwyn Property.

¶ 17. This Court's conclusion regarding the Baldwyn Property rests on the specific language Testator himself chose to express his intention. "[I]f the language of the will is clear, definite, and unambiguous, the court must give to the language its clear import." Seal v. Seal, 312 So.2d 19, 21 (Miss.1975). Testator clearly included the conjunction "and" in Item III when he established his criterion for which real property he intended to be placed in trust at his death. As previously mentioned, Item III directs that "any and all property in which [Testator] ha[s] a fractional interest with [his] mother, brother and sister" be placed in trust. (emphasis added). It is undisputed that Testator had a fractional ownership interest in the Baldwyn Property with his mother and brother at the time of his death. Testator's sister, however, did not have an ownership interest in the Baldwyn Property. See n. 2, supra. Therefore, we agree with the chancellor that Testator did not intend for the Baldwyn Property to pass into the trust for Executrix's benefit because the Baldwyn Property did not satisfy Testator's own express criterion for being placed into trust when he died. See Matter of Estate of Homburg, 697 So.2d at 1157(¶ 11).

II. Whether the chancellor erred in determining that specific property was to pass according to the law of intestate succession.
¶ 18. Executrix maintains that Testator intended Item III to be a residuary clause. Executrix argues that it is abundantly clear that Testator intended to include all remaining assets which he *1220 owned at the time of his death, including any property he might subsequently inherit. Executrix asserts that this included all real property in which Testator had a fractional interest with other family members.
¶ 19. Devisees assert that Item III does not contain language indicative of Testator's intent to establish it as a residuary clause, such as "the rest and residue of my estate," or "all my remaining property." Devisees further point out that, to the contrary, Item III is very specific both in its designation of "all my shares of stock in Lucky Star Industries, Inc." as well as "any and all other real property in which I have a fractional interest with my mother, brother and sister...."
¶ 20. We agree with Devisees that the language Testator himself chose to express his intent mortally weakens Executrix's argument that Item III establishes Testator's constructive intent to establish a residuary clause. Absent a perceptible statement of intent as to the status of his residual estate, and mindful that construing rights where they are not apparent may result in a future windfall if undisclosed property is discovered in the future, we decline the invitation to construe a residuary clause where one does not exist.
¶ 21. After a thorough de novo review, this Court concludes that the chancellor's decision was correct. Therefore, this Court specifically affirms the chancellor's decree that: (1) the value paid to Testator after his death for the inter vivos transfer of title to the shares of Lucky Star stock was to pass under the laws of intestate succession; (2) Devisees each own a one-fourth interest in those proceeds received after Testator's death; (3) title to the Baldwyn Property must pass under the law of intestate succession; and (4) Devisees each own a one-eighth interest in the Baldwyn Property. See Miss.Code Ann. §§ 91-1-3; 91-1-7; 91-1-11 (Rev.2004).
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER AND BARNES, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] The record reflects that after he executed his will in 1988, Testator entered into an assignment agreement with Lucky Star Industries, Inc. in 1995. The agreement states in relevant part that Testator assigns his "rights, title and interest" in the shares of stock in exchange for seventeen periodic payments totaling $697, 082.
[2] The record reflects that Testator died owning two parcels of real property. He shared an ownership interest in real property located in Tupelo, Mississippi with his mother, brother, and sister, and he shared an ownership interest in real property located in Baldwyn, Mississippi with his mother and brother only.