ISHEE, J.,
for the Court:
¶ 1. In December 2008, Reynolds Clark filed a complaint in Wayne County Chancery Court against Hemeter Properties, LLC; Peachtree Properties, -LL0; Gardner Clark Family, LLC; TR Clark, LLC; Charles M. Hamilton; James Steven Gardner; Adrian Cody Clark; Franklin D. Hemeter Jr.; Stephanie A. Barefoot; and James Scott Hemeter (collectively Heme-ter) to remove a cloud on the title to royalty interests and proceeds from the production ■ of hydrocarbon from oil wells located on property in Wayne County, Mississippi. Clark asserts the property was conveyed to him through a chain of title originating with the will of Ben Mea-dor. Hemeter argues the,property was conveyed to it through a chain of title originating with Ben’s wife, Martha Méa-dor. After a trial on the matter, the chancery, court concluded the property’s chain of title favored. Clark. Therefore,- Clark was deemed the owner of the -mineral interests in question. Aggrieved, Hemeter appeals .and claims: (1) a condition in Ben’s will rendered the will void and lapsed; (2) the invocation of Mississippi’s Mortmain Statute, which, required conveyance of the property, began at the time of Ben’s death and expired before Clark was granted rights to the property; (3) a prior chancery court order from 1979 favoring Clark’s chain of title was incorrect; and (4) the chancery court erred in its determination that Charles was not a bona fide purchaser of the property. ■
STATEMENT OF’FACTS
¶ 2. Prior to the trial on this matter, the parties entered into an agreed stipulation of facts. Therein, the parties acknowledged the primary issue at hand involves ownership of a 45% mineral'interest, 45% of 1/8 overriding royalty, and 45% of 5916/61667 of 1/8 royalty on property located in the SE 1/4 of NE 1/4 Section 20, Township 8 North, Range 6 West (the property) near Waynesboro, Mississippi. The- property originally belonged to: the United States Government, but it was granted to Mobile and Ohio Railroad Company (Mobile) in 1853. Mobile eventually *732 conveyed the land to J.G. Meador by deed in 1890. After Meador passed away in 1946, his heirs, including Ben, filed a partition suit in the chancery court asking the court to divide the land and all rights therein. The chancery court awarded Ben all of the land, including all rights to any oil, gas, and other minerals underneath the land. The chancery court also granted Ben and the other heirs the right to an outstanding 1/8 non-participating royalty interest with each heir’s share of the interest determined on a person-by-person basis.
¶ 3. Ben eventually married Martha, but the couple remained' childless. In 1962, Bén died testate. In Ben’s will he left Martha everything he possessed, including the property in question, in a life estate, but the property was to be conveyed to Father- Flanagan’s Boys’ Home (FFBH) upon Martha’s passing on the condition'the property never be sold (the condition). Martha failed to probate Ben’s will. Instead, she wrote letters recorded by her attorney, G.B. Cole, one month prior to her passing in 1973 that granted herself a life estate in the property but upon her death conveyed the property to her brother, Charles Cole IV, through G.B.
¶ 4. Five years after Martha died, FFBH offered Ben’s will for probate in the chancery .court to prove Ben had left the property in question to FFBH, In August 1978, prior to. the chancery .court’s review of Ben’s will, FFBH conveyed the property by quitclaim deed.to Clark and Robert T. Comerio but reserved all mineral rights. In December 1978, FFBH again conveyed the property by quitclaim deed but eliminated all .reservations and gave the land and all mineral rights solely to Clark.
¶5. - Shortly thereafter, the chancery court reviewed Ben’s -will and entered an order in 1979, which determined Ben’s intent was to leave the property in question and all mineral rights to Martha in a life estate and to FFBH upon her death. However, the chancery court found the condition -violated several Mississippi statutes. First, - the condition constituted an illegal restraint on alienation of land. Second, the condition was contrary to Mississippi’s Mortmain Statute, which required any charity inheriting land must have divested itself of the land within ten years after the land was legally owned and held by the charity. Nonetheless, the chancery court concluded the will was valid but for the' illegal condition and struck the condition from'• the' will, but allowed FFBH to retain the property pursuant to FFBH’s conveyance within ten years. If FFBH failed to make a proper conveyance of the land within the allotted time, it would be forced to surrender all rights to the property.
¶6. In February 1979, after the chancery court entered its order in favor, of FFBH, Clark obtained a final decree on the property due to FFBH’s December 1978 quitclaim deed in favor of him. Nonetheless, four years later, Charles executed a mineral deed on the property in favor of Nolan Clark. In 1996, N-olan died testate leaving his alleged interests in the property to Hemeter.
¶ 7. A series of events, then took place between 2006 and the present wherein Hemeter and Clark separately executed various mineral leases with reservations to third parties. Regardless of what transpired after 2006, the central question is which chain of title is valid — the title descending from Ben to FFBH to Clark or the title descending- from Martha to Charles to Nolan.
¶ 8. In December 2008, Clark filed suit against Hemeter in the chancery court ultimately seeking resolution of the question of a valid chain of title to the property. The chancery court entered a final judg *733 ment in September 2010 in favor of Clark, The chancellor determined Ben’s -will was valid, and Ben’s intent' was for Martha to retain all interests in the property in a life estate until her death, at which point FFBH inherited all rights to the property. The chancery court acknowledged the condition was contrary to Mississippi law but agreed with the original 1979 order concluding that although the condition was void, removal of the Condition from Ben’s will restored the legality of! the will itself. Ultimately, two chancellors separately agreed in 1979 and again in 2010 that the illegal condition did not render Ben’s will void because removal of the condition cured the will’s impediment without disturbing the testator’s intent. Therefore, FFBH properly inherited the land, and the chain of title legally descended to Clark. Conveyance of the property’s mineral interests by Charles and G.B. to Nolan was deemed void.
¶ 9. Aggrieved, Hemeter appeals claiming: (1) the chancery court’s order in 1979 was improper, and the property should have been granted to Charles; (2) the condition rendered the will void and lapsed; (3) FFBH failed to ■ fulfill the Mortmain Statute’s ten-year-property-conveyance requirement be'cause the ten-year period began at the time of Ben’s death; and (4) the chancery court erred in its conclusion Charles was. not. a bona fide purchaser of the property. Finding no error, we affirm.. ,
STANDARD OF REVIEW
¶ 10. It is well settled that we analyze a chancellor’s findings of fact under an abuse-of-discretion standard of review and questions of -law under a de novo standard of review. Rousseau v. Rousseau, 910 So.2d 1214, 1217 (¶ 8) (Miss.Ct.App.2005) (citations omitted). However, in eases involving the disposition of property through a will, “[t]his Court must determine if effect was given to the testator’s intent when reviewing the decision of the chancellor.” Id. (quoting In re Estate of Homburg v. Clark, 697 So.2d 1154, 1157 (¶ 11) (Miss.1997)).
I. Chancery Court’s 1979 Order, Effect of the Condition on the Will, and Divesting of the Land
¶ 11. In the chancery court’s 1979 order, it addressed Hemeter’s claims that the condition rendered the will void and that FFBH had to divest itself of the land within ten years of Ben’s passing, or by 1972. The chancery court ultimately found removal of the voidable condition restored the will’s legality, and FFBH did not legally own and possess the land until Martha’s death in 1973. As such, the chancery court gave FFBH until 1983 to divest itself of the land, which FFBH did in 1978.
¶ 12. Nonetheless, Hemeter asserts the chancery court erred because the condition in Ben’s will rendered 'the will void. It further argues even if the land legally passed to FFBH, it should have been divested within ten years of Ben’s passing or by 1972. As such, Hemeter argues the property legally passed to Martha without restriction, and her conveyance of the property to Charles through G.B. was valid.
A. The Condition
¶ 13. The pertinent portions of Ben’s will reads:
FOURTH: I will, devise, and bequeath unto my beloved wife, MARTHA S. MEADOR, all of my right, title and interest in and to ■ all of my property whether the same be real, personal or mixed, including the rest, residue and remainder and wheresoever situate for and during the term of her natural life. *734 FIFTH: At the death of my wife, it is my will that all of the real estate of which I died[,] seized[,] and possessed, all of same being in Section 29, Township 8 North, Range 6 West and Section 20 Township 8 North, Range 6 West, in Wayne County, Mississippi, shall go to FATHER NICHOLAS H. WEGNER, Director, and his successors in office for ■the use and benefit of Father Flanagan’s Boys Home, Boystown, Nebraska, upon the condition that said land never be sold.
.(Emphasis added).
¶ 14. The Mississippi Supreme Court has held:, “First and foremost, having in mind that the whole idea is to allow the testator to have his way regarding-the disposition of his property, we seek and where possible give effect to. the testator’s intent.” Tinnin v. First United Bank of Miss., 502 So.2d 659, 663. (Miss.1987). (citations omitted). Accordingly, it is paramount we uphold a testator’s wishes whenever possible.
¶ 15. Nonetheless, we have long recognized the rule prohibiting unreasonable restraint on alienation of land. See, e.g., In re Estate of Kelly v. Patterson, 193 So.2d 575, 577-78 (Miss.1967). We agree with the chancery court’s determination .in 1979 that .the..condition in question constitutes an unreasonable restraint on, alienation of land. We have held conditions far less restrictive than the one at hand to be unreasonable. See, e.g., May v. Hunt, 404 So.2d 1373, 1381 (Miss.1981); In re Estate of Kelly, 193 So.2d at 578. Indefinitely preventing the sale of .the property certainly falls within the realm, of unreasonable restraints on alienation of land.
¶ 16. However,- “[t]he language used in a single clause or sentence does not control against the purpose and intention as shown by the whole will.” In re Granberry’s Estate v. Granberry, 310 So.2d 708, 711 (Miss.1975). The doctrine of equitable approximation provides a means by which courts may “give effect to the intention of the testator to the extent the law permits.” In re Estate of Kelly, 193 So.2d at 578. Furthermore, in the context of testators granting property to charitable organizations, the law of this state recognizes, “where the will shows the testator’s general intention that’ his or her property be applied to a given charitable purpose, the court can and generally must make such supplementary and administrative provisions as may be necessary to effect the testator’s purpose.” Estate of Bunch v. Heirs of Bunch, 485 So.2d 284, 286 (Miss.1986).
¶ 17. As such, we see no error in the chancery court’s decision to render the condition void and strike it from the will instead of deeming the will void in its entirety. '■ By merely eliminating the offending condition, the chancery court was able to maintain Ben’s clear intent for the property pass to FFBH. While the chancery court could not impose Ben’s restriction on alienation of the property, Ben’s dominant intentions were properly fulfilled to the extent permissible by-the law.
B. Time for Divesting of the Property Under the Mortmain Statute
¶ 18. Hemeter next attacks the chancery court’s 1979 order on the ground that even if the’ property legally passed to FFBH,’ the Mortmain Statute required FFBH to divest itself of the property within ten years from the date it legally owned and held the property. The Mortmain Statute existed under Mississippi Code Annotated section 91-5-31 (1972) and provided when-a charitable organization inherited property through a will or other devise, the charity’s failure to dispose of the property not longer than ten years “after such devise becomes effective," resulted in the charity’s involuntary surren *735 der of the property. Hudson v. Moon, 732 So.2d 927, 932 (¶20) (Miss.1999). The. Mortmain Statute was ultimately repealed in 1993.. However, it was in effect at all pertinent times prior .to and during.the chancery court’s analysis in 1979 and was, therefore, considered by the. chancery court in its 1979 order.
¶19. Hemeter argues the Mortmain Statute’s ten-year time frame began to run on the day of Ben’s death — February 16, 1962. Accordingly, Hemeter asserts FFBH’s failure to divest itself of the property by February 16, 1972, eliminated all rights FFBH might have had to the property and caused the property to revert back to Charles through Martha’s 1973 letters of intent.
¶ 20. Nonetheless, the chancery court ruled in 1979, “upon the death of Martha S. Meador on September 19, 1973, said property became ‘legally owned and held’ by [FFBH].” As-such, FFBH was required to divest itself of the property by 1983, and its conveyance of the property to Clark in December .1978 would have adhered to the Mortmain Statute’s ten-year provision.
¶21. Hemeter attacks the chancery court’s analysis by asserting the court failed to take into account the ease of Mississippi College v. May, 235 Miss. 200, 108 So.2d 703 (1959). Mississippi College involved the granting' of land by a testator to a charitable organization. Id. at 209, 108 So.2d 703, 108 So.2d at 705-06. The testator was predeceased by his wife and only child. Id. Therefore, he bequeathed the land in question to Mississippi College, a charitable institution, Id. Because the testator directly granted the land to Mississippi College, Mississippi College legally owned and held the property upon the testator’s death. Id. at 219, 108 So.2d at 710. As such, the organization had a duty to divest itself of the property within ten years of the testator’s death in order to eomply with , the Mortmain Statute. Id. Mississippi College failed to do so, and distant relatives of the testator came forward to demand the property revert back to them. Id. The Mississippi Supreme Court agreed with the testator’s heirs, and the property was taken from Mississippi College. Id., at 222, 108 So.2d at 712.
¶ 22. While Mississippi College is similar to the case at hand in that it involves a charitable organization’s duty to divest itself of property within ten years of holding it pursuant to the Mortmain Statute, one great dissimilarity distinguishes Mississippi College from the instant set of circumstances. Mississippi College was granted property directly upon the testator’s death, whereas FFBH could only claim its interest in the property at hand once Martha passed away and her life estate terminated. Certainly, it would not have been legal for FFBH to - demand Ben’s widow vacate the property such that FFBH could divest itself of the land during her lifetime. FFBH had no valid interest in the property until Martha’s life estate ended upon her death. :-
if 23. It is ah' unreasonable notion to argue Mississippi College stands in support of FFBH having a legal right to the property prior to Martha’s death.1 XJnlike in Mississippi College, Ben’s will provided the property would remain with Martha in a life estate until her death and then, but only then, would it pass to FFBH. There are no facts to support' the idea Ben’s intent was for FFBH to possess or hold the land in question prior to Martha’s death. Accordingly, we disagree with Hemeter’s argument that the chancery court erred in determining FFBH legally owned and held the property upon Martha’s death in 1973. As such, FFBH had until 1983 to divest itself of the property and did so in its conveyance of the property to Clark in 1978..: Hemeter’s attacks on *736 the chancery' court’s 1979 order are without merit.
II. Chancery Court’s 2010 Determination as to Bona Fide Purchaser
¶ 24. In its final argument on appeal, Hemeter asserts the chancery court erred in its determination that Charles was not a bona fide purchaser of the property. To defeat Ben’s will conveying the property to FFBH and later to Clark, Hemeter must show Charles was a bona fide purchaser, “that is, a purchaser for a valuable consideration without actual or constructive notice of [the] unrecorded option.” Buckley v. Garner, 935 So.2d 1030, 1032 (¶ 8) (Miss.Ct.App.2005) (citations omitted). As such, our inquiry begins with Charles’s knowledge of Ben’s will.
¶ 25. The record indicates Martha failed to probate Ben’s will upon his death and instead wrote letters recorded by her attorney, G.B., one month prior to her passing in 1973. In those letters, she granted herself a life estate in the property and upon her death passed the property to Charles. There is no indication Charles knew of Ben’s will or should have known of Ben’s will at the time the property was conveyed to him by Martha.
¶ 26. However, five years later, FFBH offered Ben’s will for probate to prove its. ownership of the property. At that time, Charles was on notice that he may not have been the true owner of the property in question. The record further reflects Charles was aware of the chancery court’s ruling in favor of FFBH in 1979 but nonetheless conveyed the property to Nolan in 1983.
¶27. Furthermore, the record is silent as to any consideration Charles may have paid to Martha for the land. “A valuable consideration is paid by one who, at the time of his purchase, advances a new consideration, surrenders some security, or does some other act which, if his purchase were set aside, would leave him in a worse position than that which he occupied' before the purchase.” Buckley, 935 So.2d at 1032 (¶ 8). Here, we see no evidence in the record that Charles was a purchaser at all. Rather, Charles would appear to have simply inherited the land and ignored the chancery court’s original 1979 order confirming title to Clark. It is' well settled we will only reverse a chancellor’s findings of fact if they are1 manifestly wrong. See, e.g., Bacot v. Duby, 724 So.2d 410, 417 (¶ 34) (Miss.Ct.App.1998) (citation omitted). , Given the facts before us, we cannot conclude the chancery court was manifestly wrong in its determination that Charles was not a bona fide purchaser of the property at hand.' This issue is without merit.
¶ 28. THE JUDGMENT OF THE WAYNE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. BARNES AND ROBERTS, JJ., CONCUR IN part And in the result WITHOUT SEPARATE WRITTEN OPINION. FAIR, J., NOT PARTICIPATING.