# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00065-SCT

*MISSISSIPPI BAPTIST FOUNDATION*

*v.*

*MISSISSIPPI ATTORNEY GENERAL LYNN FITCH, KAREN KAY VOORHIES RAYMOND, INDIVIDUALLY, KAREN KAY VOORHIES RAYMOND, AS TRUSTEE OF THE FAIRY VOORHIES RAYMOND TESTAMENTARY TRUST F/B/O JAN LAWRENCE VOORHIES, KAREN KAY VOORHIES RAYMOND, AS TRUSTEE OF THE JAN VOORHIES TRUST U/W/O WAYNE HOMER KERR, DOYLE P. SPELL, INDIVIDUALLY AND AS TRUSTEE OF THE GERALDINE SPELL BLANCHARD TESTAMENTARY TRUST, H. MAX LANDEY, LINDA LANDEY SALIBA, SARAH FYE LYONS, WILLIS A. SPELL, JUDITH SPELL, AND LEITA SPELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/14/2022 |
| TRIAL JUDGE: | HON. DEBBRA K. HALFORD |
| TRIAL COURT ATTORNEYS: | WATTS CASPER UELTSCHEY |
| | EUGENE ROBERT WASSON |
| | WILLIAM DEMENT DRINKWATER |
| | TRAVIS JONATHAN CONNER |
| | JOSIAH WILLIAM SEIBERT, III |
| | STEPHEN FRIEDRICH SCHELVER |
| | MARY JO WOODS |
| | WILLIAM F. BLAIR |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM DEMENT DRINKWATER |
| | EUGENE ROBERT WASSON |
| ATTORNEYS FOR APPELLEES: | TRAVIS JONATHAN CONNER |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHEN FRIEDRICH SCHELVER |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 03/16/2023 |

MOTION FOR REHEARING FILED:

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Mississippi Baptist Foundation and various heirs of the decedent's wife both claim ownership over certain mineral interests devised in the decedent's will at the time of the decedent's death in 1969. The will left most of the estate, including the mineral interests, to the Mississippi Baptist Foundation as trustee, with income from the trust going to the decedent's wife for life, then to his sister for life, and then to benefit the Mississippi Baptist Foundation's foreign missions. In 1969, Mississippi had mortmain laws (repealed in 1992 and 1993), the relevant portion of which provided that after ten years in the possession of certain proscribed institutions, including religious institutions, real property reverted to the decedent's heirs if the institution failed to sell the property within that ten-year time period. The Mississippi Baptist Foundation and the heirs disagree as to when the ten-year period began in this case, and, if it applies, whether the mortmain laws were/are unconstitutional. The trial court found that the mortmain laws were triggered on the date of the decedent's death in 1969 and that the mortmain laws were constitutional. Because the Mississippi Baptist Foundation had a possessory interest in the mineral interests in 1969, and because it failed to timely assert any claims regarding the property after it gained possession in 1969, this Court affirms the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

2

¶2.     The facts of this case are not disputed.  Reverend Harvey McCool died testate on August 31, 1969.  At the time of his death, McCool owned a one-half mineral interest ("Subject Mineral Interest") in a certain property in Amite County.  His will bequeathed his sister, Ideniah Kerr, certain furniture, and his wife, Maggie McCool, his personal effects.  He devised and bequeathed the remainder of his property, including the Subject Mineral Interest, to the Mississippi Baptist Foundation (MBF) as Trustee.  As to most of the property given to the MBF, including the Subject Mineral Interest, he directed

> that said Trustee shall manage, care for, invest, re-invest and handle the corpus or principal thereof and pay annually, or at such other shorter periods as it may prefer, the net income thereof and therefrom to or for the use and benefit of my wife, Mrs. Maggie McCain McCool during her lifetime, and thereafter, to my sister, Mrs. Ideniah McCool Kerr of McCool, Mississippi, during her lifetime and thereafter to or for the use and benefit of Foreign Missions carried on by, under the auspices of, or participated in by, the Mississippi Baptist Convention.

¶3.     The will was probated in Louisiana.  McCool did not have any children, so Maggie was his only heir-at-law. Maggie died testate on April 17, 1973, leaving her residuary estate, including the Subject Mineral Interest, to her three children from a previous marriage.  Kerr died on February 5, 1986.  The record contains proof of the various heirs and successors of Maggie and her heirs and successors.  The record indicates that MBF took possession of the Subject Mineral Interest in 1969, but it does not illuminate what occurred regarding the property from 1969 to approximately 2019.

¶4.     In December 2019, MBF filed a complaint to probate McCool's will in Mississippi and to confirm and quiet title to the Subject Mineral Interest.  In February 2020, it filed a First Amended Complaint.  The Complaints named all known heirs and successors of

3

Maggie. In March 2020, most of the defendants filed answers and counterclaims. Three defendants defaulted, but the trial court adjudicated that the interests of the defaulting parties were the same as the other heirs, and thus that its ruling would apply to those interests.[1] Because MBF challenged the constitutionality of Mississippi's former mortmain laws, the attorney general (AG) intervened on March 9, 2020. The parties filed competing motions for summary judgment focusing on the constitutionality of the mortmain laws, and whether, if the mortmain laws were constitutional, MBF or the heirs currently owns the Subject Mineral Interest. The AG urged the court to resolve the issue without ruling on the constitutionality of the mortmain laws, if possible, and also defended the constitutionality of the mortmain laws.

¶5. The trial court heard the motions for summary judgment on December 4, 2020. At the end of the hearing, the trial court expressed concern that not all necessary parties were before the court, and asked the parties to investigate. The trial court again heard the matter on January 7, 2022, and ruled in favor of the heirs. On January 12, 2022, the trial court entered an agreed order of dismissal of the probate portion of the complaint so that its ultimate judgment would be an appealable final order. It found that Maggie and Kerr were income beneficiaries, with no possessory interest in the property, and that MBF was consequently divested of the property in 1979, ten years after McCool's death. The court further found that the mortmain laws were constitutional. MBF appeals, arguing that the

---

[1]The defendants filed everything jointly after the initial answers, and thus will be referred to collectively as "the heirs."

mortmain laws are unconstitutional and that, even if they are constitutional, MBF retains ownership of the Subject Mineral Interest.

## ANALYSIS

### A. Standard of Review

¶6. This Court reviews a trial court's grant or denial of summary judgment de novo. *Webb v. Braswell*, 930 So. 2d 387, 395 (Miss. 2006). A moving party is entitled to a grant of summary judgment if no material issue of fact exists and the party is entitled to judgment as a matter of law. *Id.* The competing summary judgments in this case do not dispute the material facts, and address only legal issues. Both the interpretation or construction of a will and the constitutionality of laws are legal issues that this Court likewise reviews de novo. *In re Will of Carney*, 758 So. 2d 1017, 1019 (Miss. 2000); *Miss. Dep't of Revenue v. AT&T Corp.*, 202 So. 3d 1207, 1213 (Miss. 2016).

### B. Mortmain Laws

¶7. Mortmain laws, which restrict the ability of organizations to hold property, date back to the Magna Carta. Shirley Norwood Jones, *The Demise of Mortmain in the United States*, 12 Miss. C.L. Rev. 407, 407 (1992). "The idea behind the original mortmain statutes was that it was beneficial to keep land in the stream of commerce and that it should not be subject to control by the 'dead hand' of a religious or other corporation where it would no longer be subject to escheat." *Id.* (citing Austin W. Scott, The Law of Trusts § 589 (William F. Fratcher ed., 4th ed. 1989)). Mortmain laws in Mississippi date back to 1857. *Methodist Hosp. v. Slack*, 330 So. 2d 882, 884 (Miss. 1976). "Early mortmain statutes had as their

5

purpose the prevention of various evils and abuses, actual or imagined, connected with devises and bequests to charities and churches. Since such corporate bodies have perpetual existence, forfeiture and escheats were lost to the crown, taxes were lost and many feudal dues were avoided." *Id.* at 885.

> In this country and more recently, one of the purposes of mortmain is to prevent one who would not be charitable at his own expense to be so at the expense of his heirs, another is to prevent the accumulation of excessive quantities of land in such institutions, and another is to protect a testator's heirs from improper influences when he is in extremis.

*Id.* (citations omitted).

¶8. In 1890, Mississippi prohibited all testamentary devises to religious or eccelesiastical institutions. Miss. Const. art. 14, §§ 269, 270 (1890). In 1940, the Legislature changed the laws to the provisions applicable in 1969, when McCool died. As of 1940, the Mississippi Constitution provided that no person could devise more than one-third of his or her estate to "any charitable, religious, educational or civil institutions to the exclusion" of certain heirs, and that any will provision containing a devise to such institutions is void if executed less than ninety days before the testator's death. Miss. Const. art. 14, § 270 (1940). It further provided "that any land devised, not in violation of this section, to any charitable, religious, educational, or civil institution may be legally owned, and further may be held by the devisee for a period of not longer than ten years after such devise becomes effective . . . ." *Id.* Mississippi Code Section 91-5-31 codified article 14, section 270, with the addition of a provision allowing the institution to sell and convey the land, and providing that "[i]f such land be not sold and disposed of within the said period of ten years, then in that event, at the

6

expiration of the said period of ten years, it shall revert to the heirs at law of the testator under whose will it was devised to the institution holding it, or to the devises under such will, as the case may be." Miss. Code Ann. § 91-5-31 (1972). The 1940 changes were deemed the Legislature

> attempting to establish a neutral ground which would prevent the so-called evils that the original mortmain laws were designed to eliminate, yet at the same time allow a testator an opportunity to aid and promote religious, educational, charitable and civil institutions by devises and bequests within certain limitations and conditions.

*Slack*, 330 So. 2d at 885.

¶9. In 1987 and 1988, the Constitution and statute were revised to specify that the land "may be held by the devisee for a period of not longer than ten years after such devise becomes effective as a fee simple or possessory interest[.]" Miss. Const. art. 14, § 270 (Supp. 1987); H.C.R. 7, Reg. Sess., 1987 Miss. Laws ch. 670; Miss. Code Ann. § 91-5-31 (Supp. 1988); S.B. 2210, Reg. Sess., 1988 Miss. Laws ch. 489, § 2. In 1992 and 1993, the Legislature repealed the mortmain laws. H.C.R. 86, Reg. Sess., 1992 Miss. Laws ch. 614; H.B. 852, Reg. Sess., 1993 Miss. Laws ch. 342.

### C. *Ownership of Subject Mineral Interest*

¶10. MBF argues that Maggie and Kerr possessed life estates in the Subject Mineral Interest, and therefore the mortmain laws were not triggered until Kerr died in 1986. MBF then argues that because the mortmain laws were repealed without a savings clause before 1996, ten years after 1986, it retains ownership over the Subject Mineral Interest. The heirs argue that Maggie and Kerr were mere income beneficiaries of the Subject Mineral Interest

7

and that MBF had a possessory interest in 1969. The trial court agreed with the heirs on this issue. The heirs also argue that even if the mortmain statutes were not triggered until 1986, they had a vested interest in the Subject Mineral Interest, and would therefore nonetheless take possession in 1996.

### 1. Date Mortmain Triggered

¶11. MBF cites **Hemeter Properties, LLC v. Clark** in support of its argument that the ten years did not begin running until 1986. **Hemeter Props., LLC v. Clark**, 178 So. 3d 730 (Miss. Ct. App. 2012). In **Hemeter**, a decedent left all of his property in a life estate to his wife, and after she died, to Father Flanagan's Boys Home. **Id.** at 733-34. The parties argued as to whether the ten years began running at the time of the decedent's death or at the time of his wife's death. **Id.** at 734-35. The Court of Appeals found that Father Flanagan's Boys Home had no valid interest in the property until the wife's death because it could not legally demand that the wife vacate the property during her life so that Father Flanagan's Boys Home could divest itself of the property. **Id.** at 735-36. But in contrast to this case, the wife had a total possessory interest in the property during her life. In this case, Maggie and Kerr had no possessory interest in the Subject Mineral Interest because it was left to MBF as trustee.

¶12. MBF also contends that **Crook v. Commercial National Bank and Trust Co.** stands for the proposition that while the income on a property goes to a third party, the ten years does not start to run until that party dies. But that is not what **Crook** held. In **Crook**, the decedent deeded property to Commercial National Bank as trustee. **Crook v. Com. Nat'l**

8

***Bank & Tr. Co.***, 375 So. 2d 1006, 1008 (Miss. 1979). The income from the trust was to benefit the decedent's brother during his lifetime, and then the income was to go to one of the state mental institutions, a civil institution under the mortmain laws. ***Id.*** At all times, the trust property belonged to the trustee, a bank, which had the power to devise the property. ***Id.*** While MBF claims that the Court held that the ten years did not start running until the brother's death, it did not so find; rather, the Court found that the mortmain laws did not apply to the arrangement at all. ***Id.*** at 1011-12. The Court noted that the state mental institution had no right of possession or control over the property; thus, "there is no fear that large amounts of real property will accumulate under the control of a proscribed institution." ***Id.*** at 1011. The Court set forth standards for when property may be left in a charitable testamentary trust without being subject to the mortmain requirement of selling the property within ten years or having it revert. ***Id.*** at 1012. For a property in a trust benefitting a proscribed institution to be exempt from the mortmain requirement, it must adhere to the following:

> (1) there are no restrictions placed on the trustee with reference to the alienation of such property, and (2) such property shall not pass to a proscribed institution after the expiration of the trust or prior thereto except by a direct arms-length sale, and (3) the trustee shall be charged with the duty, as provided by law, that he deal with and manage the property as any prudent trustee would, including selling or disposing thereof as prudence would dictate, and (4) the trustee or trustees are not the same owners, management or trustees of a proscribed institution which is designated to share in the income or benefits of the trust.

***Id.*** Under ***Crook***, MBF clearly fails factor four, as it was trustee of the estate, including the Subject Mineral Interest, with full rights to divest the property for the benefit of the trust.

¶13. In examining the ***Crook*** test, this Court has acknowledged "that the line between when a beneficiary only has an income interest and when he has an identifiable interest in land can be blurry." ***Johnson v. Bd. of Trs. of the Miss. Ann. Conf. of the Methodist Church***, 492 So. 2d 269, 275 (Miss. 1986). In ***Johnson***, a proscribed institution took legal title as trustee, although the beneficiaries were separate. ***Id.*** The Court noted that at law, a trustee possesses property as if it were the absolute owner with the power of disposition; thus, when the trustee is the proscribed institution, the ten years began running at the death of the testator. ***Id.*** Maggie and Kerr had no possessory interests in the property or in the corpus of the trust, only an interest in any income that derived therefrom. Nothing in the will restricted MBF's ability to sell the property owned by the trust. MBF as trustee had full control over the property itself and could have divested the Subject Mineral Interest as trustee at any time. *See also* ***Slack***, 330 So. 2d 882. Consequently, this Court affirms the trial court's determination that the mortmain laws were triggered by McCool's death in 1969.

2. *Reversion*

¶14. Because the mortmain laws were triggered in 1969, the Subject Mineral Interest reverted to the heirs by law in 1979. When MBF took possession of the property, it knew or should have known that the Subject Mineral Interest was subject to the then-existing mortmain laws, and MBF knew or should have known that the Subject Mineral Interest reverted to the heirs in 1979. Thus, by law, the heirs have owned the Subject Mineral Interest since 1979.

¶15. The AG urges the Court to resolve this case without deciding the constitutional issue, if possible.

> Courts have a solemn duty to avoid passing upon the constitutionality of any law expressed by the people through their Legislature unless compelled to do so by an issue squarely presented to and confronting a court in a particular case. . . . Courts do not touch the constitutionality of a statute when it is unnecessary to do so under the particular facts of the case.

*W. Line Consol. Sch. Dist. v. Greenville Mun. Separate Sch. Dist.*, 433 So. 2d 954, 958 (Miss. 1983). With that maxim in mind, we find that MBF's claims are untimely.

¶16. Every person is charged with knowledge of the law, and MBF was therefore charged with knowledge of the mortmain laws in 1969, and that it would be divested of the Subject Mineral Interest in 1979 pursuant to the mortmain laws. *Hoskins v. Howard*, 59 So. 2d 263, 269 (Miss. 1952). Actions to recover land are subject to a ten year statute of limitations. Miss. Code Ann. §§ 15-1-7, -9 (Rev. 2019); *Lott v. Saulters*, 133 So. 3d 794, 799 (Miss. 2014) ("A suit to remove a cloud on title is considered an action to recover land."). At the latest, the statute of limitations for MBF to bring a suit to recover the Subject Mineral Interest expired in 1989. MBF offers no explanation as to why it waited forty years from the time it was legally divested of title to assert that the mortmain laws are unconstitutional. "Equity aids the vigilant and not those who slumber on their rights." *Hoskins*, 59 So. 2d at 269 (internal quotation marks omitted); *In re Last Will of Winding v. Est. of Winding*, 783 So. 2d 707, 711 (Miss. 2001) (quoting *Sims v. Stennis (In re Est. of Davis)*, 510 So. 2d 798, 800 (Miss. 1987)). Consequently, we decline to address MBF's untimely argument that the mortmain laws are unconstitutional. The heirs have legally owned the Subject Mineral

interest since 1979, and MBF knew or should have known it was divested of title in 1979, yet it failed to timely assert its claims. We therefore affirm the trial court's judgment in favor of the heirs.

## CONCLUSION

¶17. Because MBF had a possessory interest in and control over the Subject Mineral Interest as trustee in 1969 when McCool died, the trial court was correct in finding that the date of his death triggered the ten-year portion of the mortmain laws. Since MBF did not divest the property during that time, the property reverted to the heirs in 1979. MBF failed to timely protect its alleged rights and only attempts to assert them forty years later. Consequently, this Court affirms the trial court's grant of summary judgment to the heirs.

¶18. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**